## SUPREME COURT—IN BANCO.

### OCTOBER TERM—1872.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

IN RE ESTATE OF NAKUAPA, DECEASED INTESTATE,—KAAOAOPA (W.) APPELLANT, KEAHI (K.) AND MANUHEA (W.) APPELLEES.

A VERDICT does not work an ESTOPPEL unless judgment is passed upon it.

ANCIENT ADOPTION of an HEIR to be valid must be complete and definite.

The admission of incompetent evidence is not ground for NEW TRIAL if the legal evidence so preponderates that a verdict the other way would be set aside as against evidence.

#### MOTION FOR NEW TRIAL.

A verdict for the appellees was rendered at the last January term of this Court, on the issue whether the appellant was the adopted heir of the deceased under the ancient customs of the kingdom. To that verdict the following exceptions were allowed by Mr. Justice WIDEMANN, before whom the cause was tried, viz. :

1—Error of the Court in declining to charge the jury,

(1) "That the fact of adoption having been settled by a former jury, the only question for the consideration of the present jury is, the nature of the adoption as to its intent ; " (2) "That the declarations of Nakuapa and her husband, Puhalahua, made at any time in reference to the position of Kaaoaopa in their family are facts to show their intent to adopt her ; " (3) "That all the acts and declarations of either Nakuapa or Puhalahua relative to Kaaoaopa are to be taken together, at whatever time made, in order to determine her relation to them, and their intent in adopting her."

2—Error in charging the jury, (1) "That declarations since the law of 1843 that the claimant was heir cannot be received ; " (2) "That the adoption must have been made before 1843 ; " (3) "That it is not enough that Puhalahua took the child before his marriage with Nakuapa, but it must be shown that Nakuapa adopted her as an heir."

3—Error in admitting as evidence for the appellees, against the wishes of the appellant, and without previous notice thereof, the following document, viz. :

"In the matter of the estate of Nakuapa : Shortly after the death of Nakuapa, Kaaoaopa told me that she had no claim or right in the property of Nakuapa as a *keiki hanai* (foster child), and never pretended to have any right to the property of Nakuapa.

"(Signed)                      KAMEHAMEHA.

"Statement of His Majesty made and subscribed before me this 16th day of July, A. D. 1869.        L. McCULLY,
                                "Clerk Supreme Court."

The jury were charged, "that if they believed from all the acts and declarations of Nakuapa or Puhalahua, that it was their intention to adopt the claimant· as their heir, they would find in her favor."

The former verdict of adoption referred to in the above exceptions, rendered at the July term, 1868, was, that the

appellant was the intestate's *keiki hanai* (foster child). The full Court refused to set aside this verdict as unsupported by evidence, and also disaffirmed a decree of distribution based on the verdict, on the ground that it was inconclusive.

OPINION OF THE COURT BY HARTWELL, J.

The first instruction prayed for was correctly refused. We see no mode by which the former verdict could be used to abridge the work of the subsequent jury, inasmuch as the evidence that the appellant was the intestate's foster child could not be excluded from evidence that she was a foster child adopted as an heir. And besides, the early verdict had not ripened into judgment, by which alone does it operate to work an estoppel. Hawks *vs.* Truesdale, 99 Mass., 557 ; Burlen *vs.* Shannon, *Ib.*, 203.

The second and third instructions prayed for are sufficiently and substantially included in the instructions given.

The instructions excepted to were correctly given. The Act of 1843 invalidates subsequent adoptions unless made in writing. The ancient oral mode of adoption has no force unless complete before this Act went into operation. The adoptive act, call it contract or will, must be defined and complete under the ancient mode, or the statute, in order to be valid.

The record shows that Puhalahua adopted the appellant, if at all, before he married Nakuapa, but that he died testate, devising his property to his widow, Nakuapa. Whether this adoption be called a will, or contract revocable by the adopter, this disposition of his property may be regarded as annulling his adoptive act, which in no aspect became an ante-nuptial contract binding on the widow, unless expressly disaffirmed by her. The widow's mere silence would not suffice to show her revival of the original adoption.

The admission of the written statement of His Majesty presents the only question of difficulty. That statement was

In re Estate of Nakuapa.

not verified by affidavit, nor had the other side notice that it would be taken, in order that they might present cross interrogatories.    True, it was optional with His Majesty to testify, and it was not a case for a *sub-pœna ad testificandum*.    But notice can always be given that the parties intend to take such evidence, and each side has a right to file interrogatories and cross interrogatories, if the request be granted.    The failure to give such notice would invalidate a deposition had one been made, and the failure to verify by affidavit precludes the admission of this statement as evidence.

The case of Whittit *vs.* Miller is relied on as authority for refusing a new trial for the admission of incompetent evidence when the verdict rests on legal evidence.    That was a case of *crim. con.*, tried at Lahaina, in which a marriage certificate was admitted as evidence with the testimony of the witnesses of the marriage.    A motion for a new trial was heard by Chief Justice Lee, at Chambers, who held that the admission of this incompetent evidence was no cause for a new trial.    The Chief Justice remarked, that "it is a well settled principle of law that a new trial will not be granted unless there is probable cause to believe that injustice has been done by the admission of such testimony, or provided there be sufficient evidence without it to authorize the finding of the jury."    Whittit *vs.* Miller, 1 Haw. Rep., 83.    The above decision is not that of a majority of this Court, and therefore is not binding as a precedent ; but the question is important, and as it has not since been presented for adjudication, it deserves full consideration.    First, it may be observed that no objection to the certificate appears to have been made at the trial, nor does there seem to have been any conflicting evidence.    These were good and sufficient reasons for denying the motion for new trial.    But although the right decision was given, it may, with deference to the late learned Chief Justice, be doubted whether the statement of the law made in that case was precise and accurate.    A

new trial is never granted without probable cause to believe that injustice has been done, meaning by injustice any failure to give the losing party his full legal rights; but it may be impossible to show that the verdict was based on illegal evidence, if there was legal evidence also.

That a new trial is not granted for the admission of incompetent evidence so long as competent evidence remains on which to base the verdict, is not, as it seems to us, the rule of law as fixed by English or American decisions. In the English courts, discretionary power is exercised in declining to grant new trials when 'in the opinion of the Court the evidence was immaterial to such extent that the jury were not likely to be influenced thereby, and when the Court is satisfied that a new trial would result in the same verdict. In many of the courts of the United States, a similar course seems to be adopted; such, if we may rely on Digests and Text books, is the current of decisions in Wisconsin, Florida, Texas, Illinois, Missouri, Minnesota, Rhode Island, California, Georgia, New Jersey, Arkansas, Mississippi, Indiana and Maine. Hilliards' New Trials, ch. 3 and 13, U. S. Dig. *passim.* The difficulty with this view of the law, if it be correctly stated, is in keeping distinct the functions of the jury in weighing evidence and of the Court in deciding its legality. The Court must also find difficulty in ascertaining whether the jury decided on the bad or the good evidence. The New York decisions accordingly go to the length of granting new trials whenever the illegal evidence bears in the least degree on the issue, even if it be merely cumulative, although distinction is made between such error presented by a bill of exceptions and by a full statement of the case. Osgood *vs.* Manhattan Co., 3 Cow., 621; Worral *vs.* Parmelee, 1 N. Y., 521; Myers *vs.* Malcolm, 6 Hill, 296.

New Hampshire Courts appear unwilling to disturb verdicts when evidence merely irrelevant was admitted. Adams *vs.* Blodgett, 47 N. H., 223; Rollins *vs.* Chester, 46 *Ib.*, 415;

especially if they cannot see wherein it was likely to prejudice the jury. Blodgett *vs.* Farmer, 41 *Ib.*, 405 ; but otherwise, if the evidence was "very likely to prejudice the mind of the jury." Center *vs.* Center, 38 *Ib.*, 322. Earlier decisions in that state seemed to require the Court to be satisfied that the evidence actually produced the verdict. Hamblett *vs.* Hamblett, 6 *Ib.*, 342 ; Cook *vs.* Brown, 34 *Ib.*, 470. Perhaps the following case presents with due precision the New Hampshire law on the subject : "It is only in those cases where the testimony is immaterial in the broad sense of the term of having no bearing, proper or improper, that the Court can perceive, that they refuse to set aside a verdict on account of its illegal admission." Winkley *vs.* Foye, 28 *Ib.*, 519 ; and 33 *Ib.*, 176.

Massachusetts Courts prefer to restrict their refusal of new trials to cases where there "can be no reason to apprehend that it could have had any improper influence on the jury." Ellis *vs.* Short, 21 Pick., 145. In the following cases in that state, irrelevant or immaterial evidence was held not to invalidate the verdicts. Barry *vs.* Bennett, 7 Met., 362 ; Culver *vs.* Dwight, 6 Gray, 445; Doane *vs.* Baker, 6 Allen, 261 ; Sibley *vs.* Leffingwell, 8 *Ib.*, 586 ; Packard *vs.* New Bedford, 9 *Ib.*, 202. The rule is thus expressed by Chief Justice Shaw, viz.: "Such motion will not be granted if the Court can see plainly from the whole evidence, that independently of the evidence received, the evidence in support of the verdict so decidedly preponderates, that a verdict the other way would be set aside as against evidence. Thorndike *vs.* Boston, 1 Met., 249. This we regard as the correct and safe rule to adopt.

Our law is well settled in regard to setting aside verdicts for insufficient evidence; but the present exceptions fail to show whether there was or was not such evidence for the appellant, that a verdict in her favor would have rested thereon. The loose practice of referring to all the records as

In re Estate of Nakuapa.

part of the exceptions is reprehensible, but counsel cannot safely omit in their exceptions anything which goes to make out their case. These exceptions might easily have averred that there was evidence tending to support the appellant's claims, or might have set forth the evidence if the averment would not have been allowed. But in this instance we prefer not to decide on this ground. The admission that the appellant laid no claim as foster child ought not to have injured her present claim; it rather shows her good sense in anticipating the view of this Court on that subject. But her admission that she claimed no right in the estate is against her interest and calculated to prejudice her case. It is alone enough to sustain a verdict against her.

The delay of another trial is to be regretted, since evidence in this class of cases daily becomes more difficult to find, as aged witnesses die. But by the law as we understand it, the appellant is entitled to a new trial on account of the admission of the written statement, and it is granted accordingly.

W. C. Jones for the motion.

A. F. Judd and S. B. Dole, *contra*.