J. C. MERRILL & CO. *vs.* A. JAEGER, EXECUTOR OF F. T. LENEHAN.

EXCEPTIONS FROM RULINGS OF AUSTIN, J.

JULY TERM, 1885.

JUDD, C. J ; McCULLY and AUSTIN, J. J.

The Court is not required to put propositions to the Jury, although correct, in the very language used by counsel, nor to give again, in the terms proposed by counsel, what has already been given.

The jury having found that certain goods shipped by plaintiffs to defendant were to be considered a consignment and not a sale; held that the verdict was not without evidence to support it, nor contrary to clearly preponderating testimony, and must stand.

Exceptions overruled.

OPINION OF THE COURT, BY McCULLY, J.

THIS case was tried at the last January Term, when a verdict was rendered for the plaintiffs for $791 83 with interest. The verdict was set aside and a new trial had in the April Term, when verdict was given for the defendant. The plaintiffs now bring exceptions and ask for a new trial.

The case may be given by quoting the statement of the Chief Justice, in rendering his decision granting a new trial, as follows :

"This is an action to recover $872 45, stated in the bill of particulars, as follows: 'For 200 bales of hay shipped from San Francisco to Honolulu, by the bark *Wrestler,* on the 1st April, 1881,

on account of F. T. Lenehan & Co., at Honolulu, and
duly received by them on their account.......................... $ 413 10
Freight on the same................................................ 202 82

For 14 M hard pressed bricks, shipped from San
Francisco for Honolulu, by bark *D. C. Murray*, on the
13th August, 1881, on account of F. T. Lenehan & Co.,
at Honolulu, by their order and duly received by them,
including  freight.................................................... 476 00

Moneys paid to Macfarlane & Co., by F. T. Lenehan
& Co., and improperly charged to them by J..C. Merrill
& Co., August, 1881......:..................... .................. ·75 00

Total...................................................... $1,166 92

with interest upon the said amounts at one per cent. per month,
from the said dates, respectively.

### CONTRA ACCOUNT.

Amount credited J. C. Merrill & Co., by account of sale of hay
per *Wrestler*, due 15th September, 1881,

$  103 47

18th August, 1881.  Net proceeds of sale of 14 M
bricks by J. C. Merrill & Co., and credited to F. T.
Lenehan & Co........................................................ 191 00

$ 294 47

with interest from the said dates at one per cent. per month.

Balance  due J. C. Merrill & Co., $872 45."

The following bill of exceptions was allowed by the late Mr.
Justice Austin, holding the April Term.

''Be it remembered that at the trial of the said cause the fol-
lowing evidence was taken, to wit:

### EVIDENCE FOR THE PLAINTIFF.

F. A. Schaefer sworn: Am familiar with freighting between
here and San Francisco, in the last part of 1881 and 1882 ; for
compressed bales of hay, I think the freight was $1 25.

Letters from F. T. Lenehan & Co., to J. C. Merrill & Co.  The
following extracts of letters were read in evidence on the  part of
the plaintiff:

11th December, 1880, per *Consuelo.*

P. S.  'Please ship a large quantity of hay and bran, and a moderate quantity of oats, say 300 bags, all shingles (cedar), R. W. posts, 200 bbls. lime, G. & W. H. barley, Golden gate extra flour, all which will show a good freight profit.'

18th December, 1880.

'You can, with safety, send down by her (Murray) the following goods, viz:

150 bbls. Golden Age extra family flour.

150 bbls. Golden Gate extra family flour.

3000 R. W. Posts.

500 Bales of choice California Hay, not compressed.

250 Bags Bran.

200 Bags Oats.

100 bbls. lime.

100 B. boxes of medium bread.

10 M Cedar shingles.

All of which will meet with ready sale, a profit and pay a good freight for the vessel.'

January 4, 1881, per *Murray.*

'Return freight by Bk. *D. C. Murray.* You can ship the following goods by her, on our account:

F. T. L. & Co. 250 bales best Cala. Hay.

"          100 bags best Cala. Oats.

"          200 bags Bran.

"          50 bbls. English Portland Cement.

and oblige. Please purchase the above at the lowest market rates, and on the best terms.'

18th Jan., 1881, per *City of Sydney.*

'Hay: Whenever you have any spare room on your vessels you can always send from 200 to 300 bales of good California hay, which we can always dispose of to good advantage to our customers.

Bran & Oats:—The same remarks apply to these articles.'

31st Jan., 1881, per *Kalakaua.*

'Hay: There is not a pound of this article to be purchased in town at present, and we think it would pay you well to send always as much as possible on ship's account by each vessel; when-

ever you have any space left, fill it up with good hay (compressed or otherwise), bran and oats, and it will always pay well.'

14th Feb., 1881, per *Australia.*

'Please forward by the return of the bark *Kalakaua*, the following goods, viz :

F. T. L. & Co.   400-4 sacks Golden Gate extra flour.

      "          50 bags Yellow Corn.

      "          100 bales best California pressed Hay.

      "          100 bags Bran.'

5th April, 1881, per *Kalakaua.*

'Bark *Wrestler* :   We are looking daily for this vessel, and trust that she will bring a good load of Bricks, Lime, Hay, Flour, &c.'

7th May, 1881, per *Wrestler.*

'Bark *Wrestler* arrived here on the 21st ult., after a passage of 21 days from your port, and has delivered her cargo in good order, with the exception of some bales hay damaged by the bricks.

9th May, 1881, per *City of Sydney.*

'Bark *Wrestler* :   This vessel arrived here on the 21st ult., and delivered her cargo in good condition, with the exception of about 20 bales of hay, which was more or less damaged by coming in contact with the bricks.   We made no claim upon the ship for the same, as we did not wish to damage the reputation of the vessel, and think the Captain will appreciate our action in the matter.

Hay :   We were very much inconvenienced by your sending us 200 bales of hay without orders by the *Wrestler*, as we did not need it, besides we had ordered 150 bales to come down by the *Murray*.   The hay market is completely glutted, consequently we have to hold it.   Hay has been sold on the wharf at $25 per ton, which is below its cost.   Please do not send us any more goods without orders in future, as it is very apt to put us to some inconvenience and loss when goods arrive which we do not anticipate.

Bolles & Co. :   We enclose a copy of a letter from this firm, wherein they decline receiving the 100 bales hay sent them by your goodselves, on acount of it being inferior, consequently we have had to pay freight on same and pay your draft upon them

for the said hay. We have had to store it on account of the market being glutted with this article. The quality is poor, but we will endeavor to close it out at the very first suitable opportunity.'

18th May, 1881, per *Murray.*

'Hay: We regret the loss on this article, but we did the best we could for you. The market is completely glutted, in fact a lot was sold at auction to-day for $21 a ton. We will meet quite a loss on the 200 bales which you sent us ex *Wrestler.*'

6th June, 1881, per *Australia.*

'We have already addressed you by this conveyance, and the object of this mainly to enclose account sales of 100 bales hay, received ex bark *Kalakaua,* showing net proceeds $214 78 to your credit in account.'

4th July, 1881, per *City of New York.*

'Hay ex *Wrestler*: We have treated this invoice as a consignment, and have stored the whole lot on your account. The hay market is completely glutted, and it is impossible to make sales unless at a heavy loss, we therefore hold same for an advance in price—to sell at auction would be simply to give it away.'

30th July, 1881, per *Zealandia.*

'The hay invoiced per *Wrestler,* $413 10, is still on hand, and as we never ordered it, we cannot take it, but will dispose of it on best terms, at the earliest opportunity. The market is completely glutted with hay, and we are surprised at your action in continuing shipping the article in the face of such facts.'

6th August, 1881, per *Kalakaua.*

'Hay: We cannot sell this article at anything like its cost, we tried a small lot of 30 bales at auction, and it only brought $1⅛, will we hold it for better price?'

25th August, 1881, per *City of Sydney.*

Account sales: We now beg to enclose the following account sales of goods sold on your account:

Sales bran, shingles, firewood, per *D. C. M.*, N. P., due
Sept. 30........................................................ $ 610 86
Account sales, hay ex *Wrestler* per *D. C. M.*, N. P.,
due Sept. 15.......................... ................................. 103 47

All of the documentary evidence introduced at the said

trial, including extracts of letters from J. C. Merrill & Co., to F. T. Lenehan & Co., and account sales, accounts current, invoices and manifests are hereby referred to and made a part of this bill of exceptions.

The Court charged the jury in part as follows :

'The case has been fully presented by counsel. The facts are before you. As to 200 bales of hay, it is conceded by plaintiffs' counsel that it was not shipped on an order. When it arrived here, defendant was not obliged to take it. If that position was not changed, plaintiffs cannot recover as to the hay. You have heard the explanations of counsel and the letters and the testimony on both sides. You have the right, if you choose, to say that the letters characterized the keeping of the hay. If you consider there was the relation of principal and agent, from the letters, and all the facts in the case, it is for you to say. If letters should convince you this was so—that defendant was agent as to the hay, then your verdict would be against plaintiff as to the hay. If the letters and all the facts show a sale consummated, then the verdict should be for plaintiff. If plaintiff recovers as to the hay, there is to be a deduction of some $70 or $80.'

At the close of the charge to the jury the counsel for the plaintiff asked the Court to further charge as follows :

If the 200 bales of hay were sent to F. T. Lenehan & Co., as a sale, and he accepted the sale and admitted to J. C. Merrill & Co., that he held the hay on his own account, then F. T. Lenehan & Co. could not afterwards repudiate the sale.

But the Court refused to charge on this point, except as above, to which refusal as aforesaid the plaintiff by his counsel excepted.

The following evidence was also taken in the said trial :

F. A. Schaefer, sworn : Know Merrill—was his agent—some years ago—(identifies power of attorney)—do not know of any partners in J. C. Merrill & Co. Am familiar with freighting in 1881 and 1882, for compressed bales hay, freight was $1 25, I think.

Cross-Ex. Don't think I was Merrill's agent when this suit commenced. My agency terminated, I think, January, 1884. Merrill has no agency here now, I believe. This is not Merrill's

first suit against Lenehan. Don't remember first suit. Recollect being at trial about two years ago. This is third trial, I think.

Redirect. Power of attorney (exhibited) never revoked. Acted under it in this suit.

H. R. Macfarlane, sworn : (for plff.) Knew Lenehan. In 1881 had dealings with him in freights—general freights—molasses probably more than anything else. Had difficulty with molasses. He engaged to take molasses—got it on wharf—he could not take it on *Wrestler*—then it was to go on *Kalakaua*—didn't go—then it was to go on *Murray*—but it didn't go—all this happened within six weeks. Then he compromised, I think, for $75. First shipment was to be 250 bbls:—carted, coopered and had to be taken. The second time it was displaced again by sugar, which was more profitable. Tonnage was scarce then. It finally went, some in his, some in other vessels.

Cross-Ex. Recollect conversation with Captain of *Wrestler*. He said he could not possibly carry any molasses.

W. C. Wilder, sworn : (for deft.) My firm ordered facing bricks from Lenehan & Co.—2,000—they were not good—unsizable and poor colors—8,000 more were offered—we refused. them, because they were worse than the first. We had ordered 20,000 or 30,000 —then we countermanded the order. They were not delivered promptly.

Cross-Ex. Am not a brick-layer—knew the bricks were bad from their looks. They looked like culls—we used the first 2,000 somehow—I know the 8,000 were worse than the 2,000. We built the store with another lot of bricks from San Francisco— these were good bricks.

E. B. Thomas, sworn : (for deft.) Been brick work contractor for twenty-four years—built Wilder's block. Don't know where they got bricks for facing—my attention was called to some bricks that came early in the stage of building. First lot was 2,000—many culls—one-fourth of an inch difference in size— some dark, some light. For facing, you must use bricks of a size. Don't know whether any of these bricks were used—I didn't see the 8,000 lot. Think they were condemned and taken out of ship. Don't remember going to wharf with Wilder to work at them.

Cross-Ex. Never saw any bricks but first 2,000. Heard that some of the 2,000 were used—don't know—they don't send first-class bricks to these Islands—no first-class front bricks ever came here. There are no first-class front bricks in Wilder's block. The first lot of 2,000 were very bad.

T. B. Walker, sworn : (for deft.) Brick-layer for twenty-two years. Remember when Wilder's block was built—Lenehan then had pressed bricks—asked me to look at them—I told him they were very inferior. I saw one lot at Widemann's lot, near West's. They varied in thickness—colors were not so bad—but they had to be sorted. I had told Lenehan I wanted some bricks, but not like them—I told him I could not pay price of pressed bricks for these—they were worth no more than common bricks. Good pressed brick costs $37—common brick, from $15 to $20. Don't know how many I saw on Widemann's lot—I went with Lenehan to a vessel to look at some bricks—they were also inferior—some bricks were handed up from hold—they varied in thickness— labor in sorting them made them cost more than first-class bricks —they were not suitable for facing bricks—decidedly not the kind to put in a building like Wilder's.

Cross-Ex. In cornice work cutting bricks requires a deal of labor. I saw bricks that Wilder's building were made of—did not examine them.

A. Jaeger, sworn : (for deft.) Defendant. Have known Lenehan for twelve years. Remember when he went into business for himself, about four years ago. My relations with him were rather intimate. I am pretty well acquainted with his business. He had one of Widemann's warehouses, where he occasionally kept flour and bran—it was a small house. He did not keep flour and hay about his premises—if he had, I should have known it.

Cross-Ex. About June 1, 1881, he took another larger ware-house. Don't remember exactly when he had hay there. I have seen hay there.

The jury returned a verdict for the defendant, whereupon the plaintiff, by his counsel, excepted to the said verdict, and gave notice of a motion for a new trial, on the ground that said verdict was against the law and the evidence, and on the 1st day of

May the Court made a *pro forma* ruling, refusing the said motion, to which ruling the plaintiff, by his counsel, excepted."

### BY THE COURT.

From the foregoing lengthy exhibit of evidence offered on the trial, as well as from the previously quoted statement of the substance of the pleadings, it appears that, as to two items, the claims for the hay and the bricks, the single question was one of fact, whether the transactions were consignments or sales, and as to the third item, the charge upon the molasses, this was a question of fact, whether the defendant's decedent was acting as the plaintiff's agent. The instructions of the Court placed these matters before the jury solely on the evidence as submitted. No exception can be sustained as to the finding of the jury under this instruction given. But the Court refused to give a further instruction asked for by the plaintiff's counsel, this, namely, that "If the 200 bales of hay were sent to F. T. Lenehan & Co. as a sale, and he accepted the sale, and admitted to J. C Merrill & Co. that he held the hay on his own account, then F. T. Lenehan & Co. could not afterwards repudiate the sale."

We think this instruction might have been given, but we are further of opinion that it had been substantially given in the previous instructions. The Court had charged that "If the letters and all the facts show a sale of the hay consummated, then the verdict should be for the plaintiff." For a "sale consummated" once, fixed the liability of the defendant, and there could be no question of repudiation afterwards. There was nothing in the pleadings to support a question of repudiating a sale which had been "consummated," that is, made and completed, and so rendering the vendee liable to the vendor for the price of the goods. An instruction that the jury must find from the evidence whether the sale was "consummated," did not need a repetition with a supposititious instruction that the vendee could not afterwards repudiate the consummated sale.

We understand the rule of law to be that the Court is not required to put propositions to the jury, although correct, in the very language used by counsel, nor, further, is required to give again, in the terms proposed by counsel, what has already been given.

*The King vs. Henry Cornwell*, 3 Hawn. 154.

In *Conley vs. Meeker*, 85 N. Y. 618, held "That a Court is not bound to put any proposition, although it be correct in itself, to the jury in the very terms formulated by counsel; if the jury are correctly instructed as to the point, the party is not legally harmed."

Also *Morehouse vs. Yeager*, 71 N. Y. 594. *Day vs. O'Neill*, 36 N. Y. 594.

For the rest, the finding of the jury cannot be considered to be without evidence which might support it, or to be contrary to clearly preponderating testimony, and must stand.

*Forbes vs. Gibson*, 3 Hawn. 260. *Montgomery vs. Pfluger*, 3 Hawn. 388. *Rex. vs. Asegut*, 3 Hawn. 526. *Wight vs. Jones*, 3 Hawn. 755. *Foster vs. Luaialani*, 4 Hawn. 477.

The exceptions are overruled.

*S. B. Dole*, for plaintiff.

*Ashford & Ashford*, for defendant.

Honolulu, October 2, 1885.