MAE KOMETANI; SUSAN KOMETANI, MICHAEL
KOMETANI and MARILYN KOMETANI, Minors,
by their Guardian Ad Litem,
MAE KOMETANI *v.* GUY HEATH

No. 4474

SEPTEMBER 20, 1967

RICHARDSON, C.J., MIZUHA, MARUMOTO, ABE, JJ.,
AND CIRCUIT JUDGE OKINO IN PLACE OF LEVINSON, J.

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiffs, Mae, Marilyn, Susan and Michael Kometani, were injured in a two-car collision at the intersection of Kalanianaole Highway and Waa Street. Harold Kometani, Mae's husband and the father of Marilyn, Susan and Michael, was the driver of the first car. He is not a party to this suit. Defendant, Guy Heath, was the driver of the second car.

The record shows that about 9:00 o'clock in the evening on January 7, 1962, the Kometani family left the Waialae Country Club and proceeded in the Koko Head (east) direction along Kalanianaole Highway to return to their home on Waa Street. The Kometani car approached Waa Street, which interesects the highway, and entered a deceleration lane on the mauka (north) side of the two Koko Head (east) bound lanes of the highway. A stop sign was painted on the surface of the deceleration lane at a point just before the intersection. The Kometani car made two or three stops in the deceleration lane near the stop sign, then turned left into the intersection, proceeding at the rate of 10 to 15 miles per hour.

The defendant had left his friend's home, Koko Head (east) of the intersection, and was driving in the Ewa (west) direction of Kalanianaole Highway. The defendant's car collided with the Kometani car which was then in the Waa Street intersection headed mauka (north). The front portion of the defendant's sports car, a 1959 Corvette, struck the right rear portion of the Kometani car, a 1959 Oldsmobile sedan. The impact spun the Kometani car clockwise so that it came to rest facing makai (south) on the mauka-ewa (northwest) side of the intersection. All of the members of the Kometani family, except Marilyn, were thrown out of their car onto the highway. The night was clear, the pavement dry, and the highway well lighted. There were no skidmarks on the highway.

Plaintiffs' witness, Mrs. Marcelle Morrison, testified that about 9:00 o'clock in the evening of January 7, 1962, she was driving in the same Ewa (west) direction as the defendant; her car was in the makai (left) lane of the two Ewa (west) bound lanes of Kalanianaole Highway. From a point about 225 to 250 feet from the Waa Street intersection, she took her foot off the accelerator

to slow down to allow the Kometani car to cross the highway. She was driving at the rate of 43 miles per hour at that point when she saw a sports car, with three persons in it, pass her car on the right with a burst of speed. She further testified that she saw the accident, brought her car to a stop about 150 feet Koko Head (east) of the Waa Street intersection, and then continued on her way without reporting the accident to anyone at that time. She later reported the accident to the police.

Two trials were held; the first on the issue of negligence and the second on the amount of damage. A different jury sat at each of the trials held before the same trial judge. The jury at the first trial returned a verdict for the plaintiffs, and the jury at the second trial returned a verdict as follows:

|  | Special damages | General damages |
|---|---|---|
| Mae Kometani | $1,291.60 | $33,000.00 |
| Susan Kometani | 770.30 | 15,000.00 |
| Michael Kometani | 181.00 | 3,300.00 |
| Marilyn Kometani | 142.15 | 2,500.00 |

The trial court entered judgment accordingly.

The defendant appeals and assigns nine specifications of error. We see no reversible error in any of the specifications.

Specifications of Error Nos. 1 through 3 deal with the first trial and 4 through 9 with the second trial.

*Specification of Error No. 1.* The defendant specifies as error the failure of the trial judge to permit the defendant to testify or to make an offer of proof on the circumstances surrounding his prior testimony at the district court. The defendant's intent purportedly was to explain the inconsistencies in his prior testimony at the district court and his testimony given in the instant case in the circuit court.

In the circuit court, the defendant requested leave "to show where 'it' (the district court testimony) came and under what circumstances the testimony was given." Other attempts made by the defendant were:

"Q. (By Mr. Cagle) Did you ever make any complaint against Mr. Kometani (Harold Kometani) ?"

"Q. Why did you testify?"

"Q. Mr. Cagle: I've got a right to show he didn't voluntarily go down there, your Honor."

It appears that the intent of the defendant was not to explain his prior inconsistent statements but to show that the police had determined that Mr. Harold Kometani, who is not a party to the suit here, rather than the defendant, was negligent. To allow such testimony would have been prejudicial to the plaintiffs. Furthermore, the fact that the testimony was not given voluntarily at the district court hearing has no relevancy in explaining why inconsistent statements were made. It is immaterial that the defendant's testimony was made under subpoena since his statements were given under oath and he was bound to tell the truth. In any event the trial court's action did not influence the final decision to the prejudice of the defendant. *Berkson* v. *Post*, 38 Haw. 436, 439; *Trask* v. *Kam*, 44 Haw. 10, 20, 352 P.2d 320, 326; *Lyon* v. *Bush*, 49 Haw. 116, 123, 412 P.2d 662, 667. The trial court's action was not inconsistent with substantial justice and did not affect the substantial rights of the parties. Accordingly we hold it was harmless error. H.R.C.P. Rule 61.

*Specification of Error No. 2.* The defendant assigns as error the trial court's refusal to give defendant's Instruction No. 18 as follows:

> "You are instructed that a person lawfully using the highway has a right to assume that all other persons using the highway will obey the duty imposed upon them by law, and the person lawfully using the highway is not bound to anticipate that others may violate the law."

The rule is that a trial court should not give an instruction which assumes an issue in controversy, the reason being that such an instruction invades the province of the jury in determining the facts. *Mongar* v. *Barnard*, 248 Iowa 899, 914, 82 N.W.2d 765, 775; *Watt* v. *St. Louis Public Serv. Co.*, 354 S.W.2d 889, 892; *Ashley* v. *Ensley*, 44 Wash. 2d 74; 265 P.2d 829, 832; 53 Am. Jur., *Trial*, § 605. There were conflicts in the evidence concerning the defendant's "lawfully using the highway," an issue which was yet

to be resolved by the jury. The above instruction was defective in that it assumed that the defendant was not negligent at the outset.

*Specification of Error No. 3.* Defendant objected to giving plaintiffs' Instruction No. 33 on the grounds that there was no basis in the evidence for such instruction, that it was irrelevant and misleading, and consequently, that there was prejudicial error. Defendant's objection that there was no basis in the evidence for plaintiffs' Instruction No. 33 is without merit. Defendant reasons that since the testimony of other witnesses tended to show that Mrs. Morrison was not at the scene of the of the accident, defendant could not have passed Mrs. Morrison's car on the right and hence, could not have violated the ordinance. Further, defendant asserts that only the fact of passing and not the manner of passing was in issue. Mrs. Morrison's testimony, however, provided sufficient evidence on which the instruction could be based. Mrs. Morrison testified that she saw the accident and that she saw a light sports car pass her car on the right with a burst of speed. She thus testified to both aspects which were in issue. The credibility of Mrs. Morrison's testimony and that of the other witnesses was properly left to the jury to determine.

Defendant's objection that plaintiffs' Instruction No. 33 was irrelevant and misleading is also without merit. It was plaintiffs' theory of liability that, independent of and in addition to the duty of due care, defendant violated Section IX-4-b of Traffic Ordinance 1508 which the jury could consider as evidence of negligence. Plaintiffs' Instruction No. 33 consisted of the following:

> "You are instructed that Sec. IX-4-b of Ordinance 1508 of the City and County of Honolulu provides:

> 'The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety.' "

It has been stated by this court that:

> "In determining the sufficiency of a particular instruction, or part of a charge, it is not to be considered apart from its context, or the rest of the charge. Both in civil and in criminal

cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal." *Ciacci* v. *Woolley*, 33 Haw. 247, 261, 262; *Wilson* v. *Von Holt*, 25 Haw. 529, 534; *Ginoza* v. *Takai Elec. Co.*, 40 Haw. 691, 711, 712; 53 Am. Jur., *Trial*, § 842.

When plaintiffs' Instruction No. 33 is construed together with plaintiffs' Instruction No. 9, which was also given, the jury could not have been confused or misled. Plaintiffs' Instruction No. 9 was given as follows:

"You are instructed that violation of any Section of ordinance 1508 of the City and County of Honolulu, if you believe from a preponderance of the evidence that such occurred, this (sic) may be considered as evidence of negligence."

Thus, if the jury believed from a preponderance of the evidence that a violation of Ordinance 1508 (plaintiffs' Instruction No. 33) had occurred, then such violation may be considered as evidence of negligence (plaintiffs' Instruction No. 9).

Plaintiffs' Instruction No. 33 was further supplemented by plaintiffs' Instruction No. 7 and defendant's Instruction No. 9, which defined the duties of a driver on the highway, independent of any ordinance. These instructions were given respectively as follows:

"Independently of any ordinance, it is the duty of every automobile operator to keep a careful lookout ahead and to the sides in order to see any other vehicle or person or other object that may be in or approaching his course of travel, and it is further his duty to take all reasonable precautions by limiting his rate of speed and controlling his vehicle to avoid collision with any such other vehicle, person or other object."

"It was the duty of both drivers, at the time and place about which you have heard evidence, to exercise due care in the operation of their vehicles upon the highway in order to avoid collision with any person, vehicle or other property on or off such highway."

In addition, all of the above instructions were arranged and read to the jury in a logical and orderly sequence so that it cannot be said that the jury could have been confused or misled by giving plaintiffs' Instruction No. 33.

*Specification of Error No. 4.* Defendant contends that the trial court erred in giving plaintiffs' Instruction No. 9 (2) which allowed the jury to consider the reasonable value of future medical expenses reasonably certain to be required in the treatment of Mae Kometani.[1] Defendant objected on the ground that there was insufficient evidence of a blow-out fracture in the floor of the left orbit of Mae Kometani's left eye. Defendant cites *Condron* v. *Harl*, 46 Haw. 66, 374 P.2d 613, in support of his objection. The *Condron* case basically states that the "question is whether the evidence was sufficient . . ." We find that there was sufficient evidence upon which the trial court could give plaintiffs' requested Instruction No. 9 (2). Dr. Kimata, an expert medical witness, testified that x-rays taken of Mae Kometani showed a definite drop in the floor of the orbit indicating a fracture. There was also in evidence a report by Dr. Childs, a radiologist, indicating that there was a downward displacement of the floor of the left orbit.

Unlike the *Condron* case, there is no testimony here that Mae Kometani was seeking to live with the condition. Although she had not consulted a doctor for two and a half years after the accident until shortly before the trial, we do not consider the mere failure to consult a doctor, without other indications, as conduct amounting to a waiver.

Defendant also objected to the method used by the plaintiffs in proving the cost of an operation for the blowout fracture.

---

[1]Defendant unfortunately uses the term "reasonable medical certainty" rather than "reasonable certainty." See *Carpenter* v. *Nelson*, 257 Minn. 424, 101 N.W. 2d 918.

Plaintiffs asked Dr. Kimata for an approximate cost or an estimate of an operation. Dr. Kimata replied that the cost varied and it would be about a thousand dollars. "The law exacts only the kind of proof of which the nature of the case is susceptible." *Jendrusch v. Abbott*, 39 Haw. 506, 509. From the nature of the case there could only be an approximation. *Rulison v. Victor X-ray Corp.*, 207 Iowa 895, 905, 223 N.W. 745, 750.

*Specification of Error No. 5.* Defendant contends that the trial court erred in giving plaintiffs' Instruction No. 9 (4) which allowed the jury to consider the future pain and suffering and mental anguish, if any, of Mae Kometani as a result of an operation on the blow-out fracture. Defendant objected to the instruction on the ground that there was no basis in the evidence for such instruction. Dr. Kimata, in his testimony, explained the details of the major operation for the blow-out fracture which would require general anesthesia and hospitalization. There was sufficient evidence in his testimony from which the jury could find that Mae Kometani would be subject to pain and suffering and mental anguish.

*Specification of Error No. 6.* Because of her head injuries, Susan Kometani could not remember anything about her condition from the accident until the third day after the accident; consequently, her physicians were allowed to testify as to her complaints of pain and suffering. Defendant contends that the trial court erred in refusing to give defendant's Instruction No. 9 as follows:

> "The nature and extent of the injuries, if any, which proximately resulted from an accident may not be proved by evidence of statements as to aches, pains or injuries made to a doctor in connection with the doctor's observation, examination or treatment. Such statements are received in evidence for the purpose of enabling the doctor to tell you everything upon which he may have based any opinion expressed as to a person's physical or mental condition.
>
> "The opinion of a doctor as to the condition of a patient may be based entirely upon objective symptoms revealed

through observation, examination, tests or treatment; or the opinion may be based entirely upon subjective symptoms revealed only through statements made by the patient; or the opinion may be based in part upon objective symptoms and in part upon subjective symptoms.

"To the extent that any opinion testified to by a doctor is based upon subjective symptoms stated to him by a plaintiff, the jury are entitled to consider the trustworthiness of such statements in determining the weight to be given the opinion."

Defendent asserts that the physicians' testimony was admissible in evidence under that exception to the hearsay rule allowing a physician as an expert witness to state the basis upon which he has formed his professional opinion as to the extent and nature of an injury. Such opinion involves statements to the physician in the nature of past events and supposed causes, but do not go into the question of responsibility for the injury. *Lowrey* v. Jones, 219 Ala. 201, 121 So. 704. Defendant objects to the trial court's refusal to give defendant's Instruction No. 9 on the ground that there should be some limitation placed on the exception by allowing the opposing party an absolute right to such instruction. Defendant does not cite any authority in support of his theory which would make the trial court's refusal to give such instruction automatic reversible error.

The statements here were made at the second trial on damages and were properly admissible under the rule which admits into evidence expressions of pain and suffering. They relate to present pains and not past experiences. "They may be testified to by any person who heard them when uttered. They are excepted from the rule of hearsay or self-serving declarations." *Lowrey* v. *Jones, supra.*

There is a further positive ground for admitting such statements into evidence. Plaintiffs had to prove pain and suffering to show damages, a basic issue at the second trial. The testimony as to the statements made were necessarily admissible, otherwise there would have been a defect of proof. It is stated in *Kennard* v. *Burton*, 25 Me. 39, 46:

"If other persons could not be permitted to testify to them, when the person injured might be a witness, there might often be a defect of proof. The person injured might be unable to recollect or state them by reason of the agitation and suffering occasioned by it."

See 9 Wigmore, *Evidence*, § 1718-1720 (3rd ed. 1940).

*Specification of Error No. 7*. Defendant assigns as error the trial court's refusal to give defendant's Instruction No. 11 as follows:

"The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in accordance with such testimony even though a number of witnesses may have testified to the contrary if, after fully considering all the evidence in the case, you hold greater belief in the accuracy and honesty of one witness."

Defendant contends that he was entitled to this instruction since he called only one expert witness to testify, whereas the plaintiffs called several. It is not error to refuse a requested instruction which is substantially covered by other instructions. *In re Nakuapa's Estate*, 3 Haw. 400; *J. C. Merrill & Co.* v. *Jaeger*, 5 Haw. 475; *Kapiolani Estate* v. *Cleghorn*, 14 Haw. 330; *In re Ah Sam*, 24 Haw. 591; *Territory* v. *Lee Chee*, 31 Haw. 587; *Territory* v. *Honda*, 31 Haw. 913; *Ciacci* v. *Woolley, supra; Territory* v. *Martin*, 39 Haw. 100; *In re Estate of Mew Len Ching*, 46 Haw. 127, 376 P.2d 125. We find that the defendant's requested instruction was substantially covered in the court's Instruction No. 3 and plaintiffs' Instruction No. 4 given respectively as follows:

"The burden of proof in this case is upon the plaintiffs to prove and establish their claim and cause of action by a preponderance of the evidence.

"By a 'preponderance of evidence' is meant that which in your opinion has a greater weight.

"It does not mean that one side must produce a greater

number of witnesses than the other side; nor that the plaintiffs must prove their case to a degree of mathematical certainty.

"It simply means that the evidence which one party produces in favor of a fact which is denied by their opponent is more satisfactory than the evidence produced by their opponent."

"Expert testimony has been introduced before you in this case, and in considering such testimony and the weight you will give to it, you should consider the knowledge that the expert witnesses have concerning the subjects on which they have given testimony, their experience, skill, and means of knowing the things about which they testified, as shown by the evidence; and it is for you to determine as to what weight you will give such testimony in this case, considering it in the light of and together with all the other evidence in the case."

*Specification of Error No. 8.* This specification relates to the overruling of defendant's objection to the argument of plaintiffs' counsel in urging, as an appropriate award of general damages with respect to each plaintiff, a specific lump sum amount obtained by adding up amounts assigned to fragmented segments of general damages. For example, with respect to Marilyn Kometani, plaintiffs' counsel argued for an award of $4,100, being the total of the following: brain concussion, $2,000; puncture of the scalp, bleeding of the head and bleeding of the leg, $500; pain and suffering and mental anguish, $1,500; and restriction of activities, $100. Plaintiffs' counsel adopted the same method of argument in urging general damage awards of $56,400 for Mae, $29,000 for Susan, and 6,200 for Michael.

The question presented here is one of first impression in this jurisdiction. Defendant's basic objection to the use of the fragmented lump sum figure was that there was no basis in the evidence of actual dollar amounts from which counsel could argue any lump sum figure and hence, any lump sum figure was assigned arbitrarily. Defendant analogized it to the use of a mathematical formula or the per diem method which this court rejected in

*Franco* v. *Fujimoto,* 47 Haw. 408, 390 P.2d 740.[2] The reason for rejecting the mathematical formula or per diem method does not exist here.

In addition, we find an abundance of evidence in the record from which counsel could suggest in his final argument lump sum figures for pain and suffering. The second trial on damages lasted five days during which much of the evidence presented concerned injuries resulting from the accident and the nature and extent of such injuries. There was evidence of brain hemorrhage, cerebral concussions, fractures of the zygoma and skull, comminuted (shattered) fracture of the nasal bone, cuts, bruises, lacerations and injuries which made necessary plastic surgery and intravenous feeding. There was also evidence of shock, nausea, vomiting, headaches, and temporary amnesia. Evidence of permanent injuries received by Mae Kometani included narrowing of the bridge of her nose, flattening of the ridge, depressed tip, tattooing from the dirt and grime of the highway and several scars over her face. It is true that no actual figures were presented in evidence, however, it does not necessarily follow that counsel may not therefore suggest in argument lump sum figures based on the evidence presented. It is logically inconsistent to prevent counsel from suggesting from the evidence damages in terms of dollars when the jury returns verdicts based on the same evidence in terms of dollars. See 7 Wigmore, *Evidence* § 1944 (3rd ed. 1940).

Defendant's counsel objected to the argument on the ground that in *Franco* v. *Fujimoto, supra,* there was a strong indication that this court would not approve a lump sum argument. In the *Franco* case, this court disapproved the use of a mathematical formula in arguing to the jury on damages for physical pain and suffering or mental anguish, but gave no indication at all as to its thinking on the mentioning of lump sum amounts to the jury.

---

[2]In 1967, the legislature passed Act 241, S.L. 1967, which reads as follows: "In all actions for damages for personal injuries or death the parties or their counsel shall be entitled to argue the extent of damages claimed or disputed in terms of suggested formulas for the computation of damages or by way of other illustration, and shall be entitled to state in argument the amount of damages the party believes appropriate."

In a footnote in that case, it is stated: "The question of whether counsel may argue for a lump sum award in a personal injury action has never been considered by this court. Nothing in this opinion is intended to reflect a view on that issue."

However, in the *Franco* case, this court saw no incompatibility between refusing to permit a mathematical formula argument and allowing the mentioning of *ad damnum* to the jury, and left undisturbed the holding in *Condron* v. *Harl, supra* at 66, 374 P.2d 613, and *Hoffschlaeger* v. *Fraga,* 290 Fed. 146 (9th Cir.) affirming *Fraga* v. *Hoffschlaeger,* 26 Haw. 557.

The objection urged against the mentioning of a specific lump sum amount as an appropriate award for general damages is the same as the objection urged against the disclosure of the amount *ad damnum* to the jury, namely, that such action unduly influences the jury by instilling in their minds impressions which are not founded on evidence. *Stassun* v. *Chapin,* 324 Pa. 125, 188 A. 111; *Hoffschlaeger* v. *Fraga, supra.*

We cannot say that the lump sum argument had any tendency to influence the jury any more than other assertions made not only by plaintiffs' counsel, but also by defendant's counsel, within the permissible scope of the closing argument. Plaintiffs' counsel repeatedly cautioned the jury that their estimated damages were merely suggestions and that the jury was to make the final determination.

The court gave plaintiffs' Instruction No. 14 as follows:

"The law prescribes no measure by which damages such as pain and suffering and mental anguish can be estimated, but leaves it to the sole discretion of the jury to fix the amount thereof in such sum as, under all the circumstances, may be deemed just and proper. The law does not require that the plaintiffs present any direct evidence to show the amount of damages which they have sustained, or the amount of money which would fairly and reasonably compensate them for the injuries they have received."

That the jury followed the instruction and reached its verdict

upon an independent evaluation of the evidence is evident from the following:

| | General damages argued for by counsel | General damages awarded by jury |
|---|---|---|
| Mae Kometani | $56,400 | $33,000 |
| Susan Kometani | 29,000 | 15,000 |
| Michael Kometani | 6,200 | 3,000 |
| Marilyn Kometani | 4,100 | 2,500 |

Plaintiffs' counsel made no attempt to resort to a mathematical formula or per diem method of computing damages. " . . . (C)ounsel suggested flat amounts of recovery for the different areas or categories of pain, suffering, or disability, which different categories or areas bore some real relation to the differences demonstrated in the evidence." *Baylor* v. *Tyrrell*, 177 Neb. 812, 817, 131 N.W. 2d 393, 398.

The defendant has not advanced any claim that the verdict is excessive.

In stating his objection to the argument in the trial court, defendant's counsel did not specifically object to the method used by plaintiffs' counsel in arriving at the total general damages for each plaintiff, that is, by adding up lump sum amounts assigned to fragmented segments of general damages. However, we will treat the stated objection as including this aspect of the question.

We hold that counsel in his argument may suggest a lump sum amount for total general damages and also may suggest the fragmented segments of the lump sum amounts where, as in this case, such segments bear some real relation to the differences shown in the evidence. We concur with *Baylor* v. *Tyrrell, supra* at 820, in stating that ". . . to forbid counsel to the right to relate such differences in amount would effectively bar him from the right to argue the core issue in any damage case, the amount of money to be awarded."

*Specification of Error No. 9.* This specification is concerned with the use by plaintiffs' counsel, in the closing argument to the jury, of a chart listing the lump sum general damages for each plaintiff and the amounts assigned to the fragmented segments of general damages mentioned in Specification of Error No. 8.

We need not consider this specification of error inasmuch as defendant's counsel, at the oral argument on this appeal, stated that if it is permissible for counsel to mention lump sum amounts in the final argument, he saw no objection to showing such amounts in visual form.

Judgment affirmed.

*A. Singleton Cagle* (*Smith, Wild, Beebe & Cades* of counsel) for defendant-appellant.

*Walter G. Chuck* (*Chuck & Fujiyama* of counsel) for plaintiffs-appellees.