John Louie PALATO, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4959.

Supreme Court of Wyoming.

March 8, 1979.

Gary L. Shockey, Casper, signed the brief and appeared in oral argument on behalf of appellant.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Sharon A. Fitzgerald, Legal Intern, signed the brief, for appellee. Samuel A. Soulé, Senior Asst. Atty. Gen., was present for oral argument. Oral argument was presented by Fitzgerald.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

GUTHRIE, Justice, Retired.

Appellant is aggrieved by his conviction of a crime of delivery of heroin in violation of § 35–347.31(a)(i), W.S.1957, 1975 Cum. Supp. (§ 35–7–1031(a)(i), W.S.1977). This appeal emanates solely from an instance which occurred during the cross-examination of Mestas, who appeared as an alibi witness for appellant as follows:

"Q. Do you know John Snell of the Drug Task Force?

"A. I met him twice, sir.

"Q. Do you remember talking to him about this incident on August 4, 1976, at 11:00 o'clock in the evening?

"A. Yes, I do.

"Q. Do you recall telling him that you knew John had sold heroin but you didn't see why John had to ruin his life?

"MR. SHOCKEY: I object, Your Honor—

"A. No, I didn't."

Appellant advances several objections in seeking a reversal here because of improper impeachment. They are:

1. The question was based upon hearsay and could not form the foundation for impeachment;

2. The question cannot be justified by asserting that it was an attempt to impeach by the use of a prior inconsistent conduct because the witness never gave any testimony that the alleged statement could contradict;

3. The question violated the spirit of appellant's motion *in limine* and Wyoming law because it made reference to other alleged criminal conduct of appellant;

4. The cautionary or limiting instruction given by the court was not proper because it assumed facts not in evidence.

### HEARSAY EVIDENCE

Appellant's objection that this was inadmissible under the hearsay rule is based upon a partial and incomplete definition of hearsay evidence, i. e., that it was out of the presence and hearing of the defendant. This court has earlier observed that it was axiomatic that a statement will not be considered hearsay if it is merely offered to show the statement had been made and not as proof of the facts stated. *Hutchins v. State*, Wyo., 483 P.2d 519, 521 (1971). This statement was offered as proof of a prior inconsistent statement and not as proof that the defendant had delivered heroin. In this posture, it could have only been considered as going to the witness' credibility and not as substantive evidence. *In re Estate of Carey*, Wyo., 504 P.2d 793, 799 (1972), and authorities cited.

Our disposal might rest upon these authorities alone, but there are a great many cases holding the presence of the party who offers the witness is not neces-

* At the time of oral argument, GUTHRIE, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

sary to make the statements admissible to impeach such witness by reliance upon inconsistent statements. *State v. Thompson,* 71 S.D. 319, 24 N.W.2d 10, 16 (1946); *State v. Warner,* Me., 237 A.2d 150, 169 (1967); *State v. Mulhall,* 199 Mo. 202, 97 S.W. 583, 585 (1906); *Lewis v. Insurance Company of North America,* 5th Cir., 416 F.2d 1077, 1080 (1969); McCormick on Evidence, 2nd ed., § 251, p. 601, et seq.

## NOT PROPER IMPEACHMENT AND NOT PROPERLY INCONSISTENT CONDUCT

█ In our examination of the question whether this was proper by way of proof of an inconsistent statement, it is necessary to briefly summarize the facts and testimony of Mestas in support of appellant's alibi. The State relies upon proof that the alleged delivery of heroin was made at approximately 11:00 p. m., June 22, 1976, and two witnesses testified to this time and date. Mestas had just testified on direct that he was with the appellant from approximately 4:00 or 4:30 p. m. on the afternoon of the 22nd of June, and this association continued until 8:00 or 8:30 a. m. on the morning of the 23rd of June. Mestas' testimony that he and the defendant were together at all times at the Victorian Bar until 2:00 a. m. would make it impossible for Palato to have sold and delivered the heroin at 11:00 p. m. on June 22. This testimony would be completely inconsistent with any statement of Mestas that the defendant had sold the heroin, and proof of such a statement would tend to destroy his credibility as a witness. McCormick on Evidence, 2nd ed., § 34, p. 68, cites a simple, workable and understandable test which would apply to such statement as follows:

"   .   .   Seemingly the test should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a prior statement of this tenor? .   .   ."

The statement here referred to clearly comes within this ambit. *People v. Boyd,* 22 Ill.App.3d 1010, 318 N.E.2d 212, 222 (1974), suggests and approves a test that the statement had "a reasonable tendency to discredit the direct testimony on a material matter." *Commonwealth v. Pickles,* 364 Mass. 395, 305 N.E.2d 107, 111 (1973); *Larkin v. Nassau Electric R. Co.,* 205 N.Y. 267, 98 N.E. 465, 126 N.Y.S. 1135 (1912).

## EVIDENCE OF OTHER CRIMES AND ERRONEOUS INSTRUCTIONS

In order to understand the contentions of the appellant enumerated as three and four, it is proper at this point to set out the cautionary instruction which was given by the court upon its own motion after this testimony was received and objections made:

"THE COURT: At the time we recessed there had been a question asked and an objection to that question was lodged and rather immediately before the objection or during the objection the answer of Mr. Mestas was negative to a question as to whether he recalled saying to Mr. Snell certain things having to do with the defendant. Again, first, the answer was negative anyway.

"The Court informs the jury that this Court is informed by the proponent of the evidence that proponent's understanding, the State's, and what the State supposes, I take it, to be the understanding of the people who had that conversation were: These references to activities of the defendant were limited strictly and entirely to this case, the facts of this case, the alleged activities in this case, and had no reference whatever to any other time or any other place or any other event and most particularly not to any other possible crime."

█ Appellant's third and fourth propositions find their foundation in counsel's posture and his insistence that this alone created a mistrial impossible of correction. Based upon this view, he pursued a course of dogged determination to profit therefrom and relies upon the claim that this evidence conclusively created an inference that Palato was a heroin dealer. This is an inference this writer finds totally unable to

indulge when the cautionary instruction is considered. In pursuit of this argument, defendant entirely ignores the fact that this question was based upon a reference "about this incident." The instruction by the court appears to be a clarification of that phrase and an explanation of the foundation upon which the question rested and explanation to the jury why the question had been asked. Immediately upon retiring to chambers, the county attorney advised the court and other counsel that there was only one case in which John Snell had initiated any charges or had been involved with this defendant and Mestas knew this. In response to inquiry, he advised the court that he would make it very clear that this reference was only to this case and not to any other. Defense counsel repeated his objection that there was not a proper limitation to this inquiry. The county attorney, during this conference, agreed to introduce proof that this statement had no other reference to any other time or place, suggesting to defense counsel that this might not be to defendant's advantage, but that he would be happy to do so. Defense counsel repeated his belief that this could not be cured. The judge then advised his willingness to so limit this question to this incident, but defense still insisted that this was improper. He further made the positive statement that this could not be corrected when the court advised him he would so advise the jury. Counsel reiterated his objection on the basis that there was no factual evidence upon which it could be based. The judge did advise that the purpose thereof would be to remove from the jury the possibility of any inference that it referred to any other incident or the possibility of any other prejudicial substance. We have the counsel for the defendant now insisting that because the court did not, in face of his objections, allow the county attorney to lay further factual basis, that this was error. This is an anomalous position which may even suggest invited error. Although we do not pass thereon, it may be suggested that if this were error, it was not prejudicial because it sought to remove any possibility of misunderstanding this evidence in the manner the appellant insists was prejudicial.

Appellant relies upon authority which repeats the rule that it is improper for a court in its instructions to assume facts not in evidence. Because the phrase "about this incident" did appear in the interrogation of Mestas at this critical point, it seems improper to suggest that the court assumed a fact not in evidence since that fact could be inferred from the context of the interrogation. Here, we have the assertion of improper foundation.

■ The general rule against the assumption of facts not in evidence is based upon the theory that to do so is to invade the province of the jury. *Kometani v. Heath*, 50 Haw. 89, 431 P.2d 931, 934 (1967), and authorities cited. Randall's Instructions to Juries, Vol. 1, § 94, p. 128 (1922). Texts and authorities recognize that this rule, which makes it erroneous for the court to make an assumption of facts not supported by the evidence, applies to material facts. 75 Am.Jur.2d, *Trial*, § 677, at p. 629; Randall's Instructions to Juries, *supra* at p. 127. Reid's Branson Instructions to Juries, 3d ed., Vol. 1, § 23, p. 57. Cases are numerous which recognize that this rule is aimed at the assumption of material facts. *People v. Lucus*, 41 Ill.2d 370, 243 N.E.2d 228, 232 (1968); *Fields v. State*, Miss., 272 So.2d 650, 653 (1973); *State v. Thornton*, 17 N.C.App. 225, 193 S.E.2d 373 (1972); *Smith v. U. S.*, 6th Cir., 230 F.2d 935, 938 (1956); *Pulliam v. State*, 167 Neb. 614, 94 N.W.2d 51, 60 (1959). In the case of *Thornton, supra* 193 S.E.2d at p. 375, appears this following applicable quote:

"The court may not assume as true the existence or nonexistence of any material fact in issue, since the credibility of all the evidence tending to establish the crime and the identity of the defendant as the perpetrator of that crime is for the jury to determine."

It is impossible to equate foundational facts with material facts.

Although this court has not had occasion to define a material fact in a criminal pro-

ceeding, we have in *Johnson v. Soulis*, Wyo., 542 P.2d 867, 871–872 (1975), defined it as:

". . . A material fact has been defined as one having some legal significance, that is, under the law applicable to a given case, it would control in some way the legal relations of the parties; as one upon which the outcome of litigation depends in whole or in part; as one on which the controversy may be determined; as one which will affect the result or outcome of the case depending upon its resolution; and one which constitutes a part of the plaintiff's cause of action or of the defendant's defense." (Footnotes not here set out.)

And again in *Wood v. Trenchard*, Wyo., 550 P.2d 490, 492 (1976), in reliance upon *Johnson*, we repeated the test as a fact which "would have the effect of establishing or refuting one of the essential . . . defense[s] asserted by the party." The alleged assumption by the court does not involve a fact which would directly determine the guilt or innocence of the defendant but merely refers to an occasion upon which an inconsistent statement is alleged to have been made. Additionally, this was denied and pursued no further.

Affirmed.

ROSE, J., filed a specially concurring opinion.

ROSE, Justice, specially concurring.

I concur in the result reached in this case, but only because the defendant failed to object below or argue on appeal that it was error for the prosecutor to lay the foundation for impeachment by a prior inconsistent statement and then fail to offer proof of the alleged impeaching statement. In this case, the prosecutor asked Mestas whether he recalled making a certain statement to an undercover agent. As suggested by the majority, the statement—if made—would have affected the witness' credibility. The witness denied making the statement, but the jury was left with the unmistakable innuendo that Mestas had, indeed, made the statement. Having established the foundation for potential impeachment by a prior inconsistent statement, the prosecutor made no attempt to prove the alleged impeaching statement. Such a procedure is erroneous even though it does not in every situation represent reversible error. *Roby v. State*, Wyo., 587 P.2d 641 (1978); and *Searles v. State*, Wyo., 589 P.2d 386 (1979). *See, People v. Williams*, 105 Ill.App.2d 25, 245 N.E.2d 17, 21 (1969).