ERNEST C. GONSALVES, AS TRUSTEE FOR THE
CREDITORS AND STOCKHOLDERS OF OAHU
HOME DEALERS AND MOVERS, LTD., A DIS-
SOLVED CORPORATION *v.* FREDERICK JAY
GILBERT AND SAMUEL SIMEON GILBERT, JR.

No. 4097.

SEPTEMBER 13, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ
AND LEWIS, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This appeal was originally brought by Oahu Home Dealers and Movers, Ltd., plaintiff, from a judgment of the circuit court of the first circuit in favor of Frederick Jay Gilbert and Samuel Simeon Gilbert, Jr., defendants, in an action for relief against forfeiture of a lease. During the pendency of the appeal, plaintiff was dissolved as a corporation, and Ernest C. Gonsalves, trustee for its creditors and stockholders, was substituted as appellant by order of this court.

Plaintiff filed its complaint on August 9, 1956. The complaint contained the following allegations: That on February 26, 1955, plaintiff and defendants executed a lease whereby defendants, as lessors, demised to plaintiff, as lessee, a parcel of land on Ohua Avenue, Waikiki, Honolulu, covered by Transfer Certificate of Title No. 47588, for a term of 55 years from March 1, 1955; that plaintiff paid to defendants all sums payable as rent and deposit up to and including December 10, 1955; that on or about February 13, 1956, plaintiff tendered to defendants' authorized agent and father the sums that became payable after December 10, 1955, but defendants, through their agent and father, refused to accept the tender and

stated that it was their intention to terminate the lease and declare a forfeiture of plaintiff's leasehold interest in the demised premises; that on or about February 18, 1956, defendants mailed to plaintiff's officers a written declaration purporting to terminate the lease, declaring the same forfeited, and stating that they had re-entered the demised premises; that in the declaration, defendants indicated that plaintiff, during its possession of the demised premises, was in default in paying the monthly installments payable under the lease a minimum of seven times, and that plaintiff had been delinquent in paying taxes, and had defaulted in keeping the premises covered by insurance; that in reference to the statements set forth in the declaration, the taxes were fully paid, the insurance had been taken out and was in effect in accordance with the terms of the lease, and all sums payable to defendants were paid up to and including the payments due on or before December 10, 1955; that delinquencies in the payment of any sums payable to defendants on or before December 10, 1955, were condoned and waived by defendants through their agent and father; that defendants, through their agent and father, caused plaintiff to believe that no termination or forfeiture of the lease would be declared by reason of any delinquency unless plaintiff was so notified in advance and given a reasonable opportunity to take care of the same; that on or before February 11, 1956, plaintiff, through its authorized officer made several attempts to contact defendants' agent and father but was unable to do so; that at no time before February 13, 1956, did defendants by any means of communication notify plaintiff that they intended to hold plaintiff to the strict terms of the lease; that if plaintiff had known, before any delinquency, that defendants intended to terminate the lease and declare a forfeiture on such ground, it would have conformed immediately to the terms of the lease;

that since their re-entry upon the demised premises, defendants have been collecting rent from the subtenant, to whom plaintiff had rented the demised premises, at the rate of $170 per month; that as nearly as plaintiff could ascertain, there was owing from plaintiff to defendants, after deducting the rents collected by defendants from the subtenant, the sum of $815.40, which included interest from January 1, 1956; and that with the filing of the complaint, plaintiff was depositing with the chief clerk of the circuit court such sum of $815.40 as a tender of full payment of all sums payable to defendants, and an additional sum of $200 to take care of any deficiency, if the court should determine that the amount tendered was insufficient.

A copy of the lease and a copy of the declaration mailed by defendants to plaintiff were attached to the complaint and incorporated therein by reference. The lease provided for the payment by plaintiff to defendants, during the first ten years of the term from the first day of March 1955 to the last day of February 1965, an annual rent of $2,100, in monthly installments of $175. It also required plaintiff to deposit $5,000 with defendants as security for the faithful observance of plaintiff's covenants and the construction of buildings on the demised land as agreed therein, such deposit to be made as follows: $1,500 upon the execution of the lease, and $325 or more between the first day and the tenth day of each month beginning in April 1955. The lease further provided "that if the Lessee shall fail to pay the said rent or any part thereof when the same shall become due, whether the same shall or shall not have been legally demanded, or fail in any other respect faithfully to observe or perform any condition or covenant in this lease contained and on the part of the Lessee to be observed or performed and any such default shall continue for thirty (30) days * * *, the Lessors may at once re-

enter into and upon the demised premises or any part
thereof in the name of the whole, and thereby terminate
this lease," and "that the acceptance of rent by the Lessors
shall not be deemed a waiver of any breach by the Lessee
of any covenant or condition of this lease, nor of the Les-
sors' right to declare and enforce a forfeiture for any such
breach. * * *"

To the complaint, defendants interposed a motion to
dismiss on the ground that it failed to state a claim upon
which relief could be granted, or, in the alternative, for
summary judgment in their favor on the ground that the
pleadings on file, together with the affidavits and exhibits
attached to the motion, showed that there was no genuine
issue as to any material fact and that defendants were
entitled to a judgment as a matter of law. In opposition
to the motion, plaintiff filed an affidavit of its vice pres-
ident and general manager.

The circuit court held a hearing on April 30, 1958, at
the close of which it orally granted the motion to dismiss
for the reason "that complaint shows and admits a con-
tinuing breach of a continuing covenant for a period of
seven months and that it further alleges and admits two
subsequent breaches of the covenant, and that there is not
alleged in the complaint sufficient facts to show any equi-
table relief against the forfeiture." It directed defendants'
counsel to prepare a final order of dismissal of the com-
plaint, but reserved the matter of the disposition of the
money deposited by plaintiff with the chief clerk for later
determination.

Thereafter, and before preparing his draft of the order
of dismissal as directed by the court, defendants' counsel
filed a document entitled, "MOTION TO TAX COSTS
AND EXPENSES AND STIPULATION." In the docu-
ment he set forth the following items as costs and expenses
incurred "as a direct result of this cause" by defendants:

| | | |
|---|---|---|
| 1. | Delinquent rent and security deposit installment, January 1956 | $ 500.00 |
| 2. | Delinquent rent and security deposit installment, February 1956 | 500.00 |
| 3. | Free rent furnished to undertenant by defendants, March 1956, because plaintiff retained $170 last month rent deposit of undertenant | 170.00 |
| | | $1,170.00 |
| | Less: Rent collected by defendants from undertenant, February 1956 | 170.00 |
| | | $1,000.00 |
| 4. | Interest on $1,000, 2 years at 4½ per cent | 90.00 |
| 5. | Unpaid balance due on broker's commission to Wendell Brooks, realtor, on lease transaction | 140.00 |
| 6. | Costs: | |
| | (a) Thermofax copies of exhibits | 4.30 |
| | (b) Photostats, 10 pages | 5.00 |
| | (c) Certified mail postage | .45 |
| | (d) Notary fees | 2.50 |
| 7. | Attorney's fee | 750.00 |
| | | $1,992.25 |

He then moved that $1,015.40, being the sum on deposit with the chief clerk, be taxed against plaintiff as costs and expenses, and stipulated on behalf of defendants that the taxing of the same "is with prejudice to and is in full satisfaction, settlement and accord of all costs and expenses incurred by, due and owing to Defendants as a result of this proceeding, * * *"

On June 5, 1958, the court entered a "DECISION AND FINAL JUDGMENT," in which it incorporated the terms

of its oral decision, adjudged dismissal of the complaint, and assessed $1,015.40 against plaintiff as taxable costs and expenses. This decision and final judgment was vacated insofar as it related to costs and expenses in order to permit plaintiff to present its objections to their allowance. Plaintiff contended that defendants' bill for costs and expenses should not have been allowed because it was not a bill for costs but included delinquent rent, damages, interest, unpaid balance of broker's commission, and attorneys' fee, which were not proper cost items but were items which should have been made subjects of a counterclaim. On June 20, 1958, after a hearing on plaintiff's objections, the court entered its "FINAL JUDGMENT" from which the present appeal was taken. This document recited that $1,992.25 was owing by plaintiff to defendants "on account of compensation, costs and expenses due as a result of this proceeding"; granted a judgment in favor of defendants for the sum of $1,992.25, subject to defendants' stipulation waiving all sums in excess of $1,015.40; and directed the chief clerk to pay over to defendants or to their counsel of record the sum of $1,015.40, which plaintiff deposited with him when it filed the complaint.

The court did not rule on defendants' alternative motion for summary judgment. That the judgment was based solely on the ruling on defendants' motion to dismiss is clear from the language of the decision and the following colloquy between court and counsel at the hearing on plaintiff's objections to the allowance of defendants' bill for costs and expenses:

"MR. RIDLEY: Then there was, I believe on April 30, if your Honor please, a hearing, is that correct, or was it April 30, a hearing on the motion for a summary judgment?

"MR. COREY: It was not a motion for a summary judgment, Mr. Ridley.

"THE COURT: To dismiss.

"MR. COREY: That's correct.

"MR. RIDLEY: A motion to dismiss which makes it better for me. Any how that was set down for hearing and it was continued over to June 16.

"THE COURT: The minutes of the Court show that on April 30 there was a hearing on a motion to dismiss and the motion was granted."

At the same hearing, defendants' counsel further stated: "This is decided on the law, not on the facts and this is in the nature of a general demurrer. This is not a motion for a summary judgment which has been decided here * * *."

H.R.C.P., Rule 12 (b) provides that if, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. It is apparent from the record that the court did not act under this rule and did not consider "matters outside the pleading" in reaching its decision. The question as to whether the court should have considered such matters is not before this court.

Such being the case, we may not consider the affidavits filed by defendants in support of their alternative motion for summary judgment, nor may we consider the affidavit filed by plaintiff in opposition to such motion.

The principal question for decision on this appeal is whether the complaint stated a claim upon which relief could be granted. The court ruled that the complaint did not state such a claim because (a) it showed and admitted a continuous breach of continuing covenants to pay rent and special security deposit for a period of seven months, (b) it showed and admitted two breaches of covenants to

pay rent and special security deposit "subsequent to Defendants' refusal to accept further rent payments"; and (c) it did not allege sufficient facts to show any ground for relief against the forfeiture of lease.

The complaint contains an implied admission of "default in paying the monthly installments of rent a minimum of seven times" before December 1955. But plaintiff did not plead itself out of court by making such admission, for it alleged payment of rent and other sums due up to and including December 10, 1955, before defendants declared a forfeiture of the lease. The general rule is that acceptance of rent with knowledge of an existing breach of covenant constitutes a waiver of the right of forfeiture for such breach. *Davis* v. *Spencer,* 3 Haw. 274, 285; *Hawaiian Homes Commission* v. *Bush & Horcajo,* 43 Haw. 281, 285; 32 Am. Jur., *Landlord and Tenant,* § 883; 51 C.J.S., *Landlord and Tenant,* § 117; 3A Thompson on Real Property, 1959 Replacement, § 1329. It is argued that the general rule does not apply in this case because the lease provided "that the acceptance of rent by the Lessors shall not be deemed a waiver * * * of the Lessors' right to declare and enforce a forfeiture" for a breach of any covenant of the lease. Whatever may be the effect of such a provision where rent is accepted without any special understanding, it certainly does not foreclose a lessor from waiving his right of forfeiture in a particular case. Here, plaintiff alleged that "any delinquencies in payments of any sums payable to Defendants under the terms of said lease on or before December, 1955, were condoned, acquiesced in and waived by the Defendants through their authorized agent and father."

The complaint also contains an admission of failure to pay rent and security deposit for the months of January and February 1956. Generally, where there are continuing breaches of continuing covenants, acceptance of rent with

knowledge of such breaches "operates as a waiver only up to the time of such acceptance and does not preclude the lessor from taking advantage of breaches allowed to continue thereafter." *Carter* v. *Wing Chong Wai Co.,* 12 Haw. 291, 297. But here, again, plaintiff did not necessarily plead itself out of court by such admission, for it also alleged "that the Defendants, (through their authorized agent and father) caused it to believe that no termination or forfeiture of the lease would be declared by Defendants by reason of any delinquency unless Plaintiff was so notified in advance and given a reasonable opportunity to take care of any such delinquency," and "That on and prior to February 11, 1956, Plaintiff, through its authorized officer, made several attempts to contact Defendants' agent and father but was unable to do so; that at no time prior to February 13, 1956, did Defendants by any means of communication, notify Plaintiff that they intended to hold Plaintiff to the strict terms of said lease; that if Plaintiff had known, prior to the time of any delinquency, that Defendants intended to terminate said lease and declare a forfeiture, in case Plaintiff became delinquent, Plaintiff would have immediately conformed to the terms of said lease."

Where a lessor causes his lessee to believe that he will not require strict adherence to any of the terms of his lease and thereby lulls the lessee into nonaction, he may be estopped from enforcing a forfeiture for lessee's default in complying with such terms. *Kanakanui* v. *De Fries,* 21 Haw. 123, 128; 32 Am. Jur., *Landlord and Tenant,* § 882; 51 C.J.S., *Landlord and Tenant,* § 117. The rule is discussed in 3A Thompson on Real Property, 1959 Replacement, § 1328, as follows: "This doctrine has been applied whenever the general course of dealing has led the party to believe that strictness in compliance with the terms of the condition would not be required. Yet, even after an

estoppel, if the covenantee give notice that he intends henceforth to stand upon his legal right, it has been held that he may enforce the terms of the contract strictly from that time on. On the other hand, it has been declared that, if one party to a contract intentionally by language or conduct leads the obligor to believe that he need not perform promptly, and that no advantage will be taken of the failure, it is equivalent to an express agreement to that effect and is a waiver of the forfeiture. * * * If the facts show a clear intention on the part of the lessor to waive his right of forfeiture, there is no reason why he should not be held to such waiver. The case is an appropriate one for the application of the doctrine of estoppel. If a lessor, by his acquiescence, induced lessees to believe that strict observance of their covenant to pay rent was not required by him, it is inequitable in him to enforce a forfeiture, and the court will not do so."

It is also well settled in this jurisdiction that relief against a forfeiture of lease for breach of covenant will be granted where full and exact monetary compensation can be made to the lessor, provided the breach was not due to gross negligence and has not been persistent and wilful. *Garrett* v. *Macfarlane,* 6 Haw. 435; *Henrique* v. *Paris,* 10 Haw. 408; *Lau Dan* v. *Ah Leong,* 19 Haw. 417; *Kanakanui* v. *De Fries, supra.* In *Henrique* v. *Paris, supra,* at page 411, this court stated: "Courts of equity regard the performance of covenants in leases as the real object desired, and the right of entry as mere security for such performance, and so they do not always hold parties strictly to their legal rights, but often relieve against a forfeiture, especially if full and exact compensation can be made to the injured party. Accordingly, in case of a breach of a covenant to pay rent, relief is generally granted against a forfeiture, because payment of the rent with interest thereon is deemed full and exact compensation.

But in the case of other covenants, as to repair, insure, clear of lantana, &c., relief will not generally, except in cases of fraud, mistake, accident or surprise, be granted, because the exact compensation cannot be ascertained. And even in cases where exact compensation can be made, relief will not be granted if the breach is due to gross negligence or is persistent and wilful on the part of the lessee."

The complaint does not contain any allegation from which we can definitely say that plaintiff's default in the payment of rent and security deposit was due to gross negligence or was persistent and wilful. On a motion to dismiss, the allegations of the complaint are to be viewed in a light most favorable to plaintiff. 1A Barron and Holtzoff, *Federal Practice and Procedure,* Rules Edition, § 350; 2 Moore's Federal Practice, 2d ed., § 12.08. In this connection, the following statement of this court in *Kanakanui* v. *De Fries, supra,* at page 127, is pertinent: "The question is whether, upon the facts alleged in the bill, it appears that the default of the complainants has been so persistent and wilful that they are not in a position to invoke the aid of equity. At first blush it would seem that so long a time had elapsed since the default first occurred that it ought to be so regarded. On the other hand the allegations show that there were several circumstances of extenuation. * * * Under all the circumstances, we think the lessee's failure to pay the taxes was not 'persistent and wilful' within the meaning of the rule and that the bill states a case for equitable relief. The demurrer should be overruled."

On this appeal, our primary concern is as to whether the complaint stated a claim upon which relief could be granted. We are not concerned as to plaintiff's ability to establish the facts alleged in the complaint. It may well be that, on the merits, this case may still be dismissed, as

in the *Kanakanui* case. In that case, after the demurrer was overruled, pursuant to the decision of this court, there was a trial on the merits and the bill was dismissed upon a finding that lessee's failure to pay taxes was persistent and wilful and was not induced by any act of lessor. *Kanakanui v. De Fries,* 21 Haw. 381.

We are of the opinion that the complaint in this case states a claim upon which relief can be granted, and plaintiff is entitled to be heard on the merits.

We turn now from the question of the sufficiency of the complaint to the matter of the disposition of the sum of $1,015.40 deposited by plaintiff with the chief clerk. Inasmuch as this case will be remanded to the circuit court for further proceedings on account of the error in granting defendants' motion to dismiss, we deem it unnecessary to enter into a discussion of this matter beyond stating our opinion that the court erred in entering a judgment against plaintiff for the payment of items which were not properly taxable as costs on a motion to tax costs and expenses. As stated in plaintiff's objections, defendants' bill for costs and expenses included noncost items, such as delinquent rent and security deposit, interest, unpaid balance of broker's commission, and attorney's fee. If such items are recoverable at all in this case, they may be recovered only as counterclaims. A counterclaim may not be allowed in the absence of a proper pleading therefor. *United States v. Finn,* 239 F. 2d 679; *New and Used Auto Sales v. Hansen,* 245 F. 2d 951.

After plaintiff was dissolved as a corporation, defendants filed a Motion to Dismiss Appeal. One of the grounds urged for dismissal was that there no longer was a party capable of prosecuting the appeal. The substitution of Ernest C. Gonsalves, trustee for plaintiffs' creditors and stockholders, as appellant in the place of plaintiff has rendered this ground moot. Defendants stated their re-

maining grounds for dismissal as eight separate grounds. Upon examination of the grounds so stated, we find that they in substance set forth two propositions, namely, that relief from the forfeiture of lease should not be granted because plaintiff's negligent conduct in suffering an involuntary dissolution operated as an abandonment of the lease and that such relief should not be granted for the further reason that the termination of plaintiff's legal existence has made the performance of the lessee's covenants impossible. These propositions involve issues which require decision in the first instance by a court of original jurisdiction. In this case, the court of original jurisdiction is the circuit court. Under R.L.H. 1955, § 214-4, our jurisdiction here is appellate, not original. Thus, the propositions may properly be presented to the circuit court for its consideration upon remand.

Reversed.

*Daniel G. Ridley* (also on the briefs) for plaintiff-appellant.

*Ralph E. Corey* (*Clark & Corey* on the briefs) for defendants-appellees.