MEW SUN LEONG *v.* HONOLULU RAPID TRANSIT CO., LTD., CLIFFORD K. HIGA AND GILBERT K. W. WONG (CIVIL NO. 15628).

MEW SUN LEONG *v.* FLYNN-LEARNER, A CALIFORNIA CORPORATION (CIVIL NO. 19066).

No. 4873.

JULY 7, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

On April 29, 1964, plaintiff Leong was a passenger on a bus owned by defendant H.R.T. and operated by defendant Higa. The bus was traveling diamond head on Ala Moana Boulevard and turned left into Ala Moana Center after stopping at a stop sign located on the medial strip. Defendant Wong, an employee of Flynn-Learner, was driving his car in the ewa direction on Ala Moana Boulevard. The car and bus collided injuring Leong. A jury trial was held in the First Circuit Court. It was Wong's contention that he was traveling at or below the speed limit (35 mph) and that the cause of the collision was Higa's failure to yield. It was Higa's contention that the cause of the collision was Wong's excessive speed. The jury held Wong and Flynn-Learner liable for $27,500, and exonerated Higa and H.R.T.

Wong and Flynn-Learner appeal on ten grounds. Two of these grounds compel reversal and remand so we need not reach the other eight.

### I. The Refusal to Instruct on Duty to Yield.

The trial court gave Wong's requested instruction No. 43:[1]

"Section VIII 2(d) of the Traffic Code of the City and County of Honolulu:

"Vehicles intending to turn left from a divided highway, exit [from] which is made by means of a left

---

[1] Defendants' instruction No. 43 is a statement of "Section VII 2(d) of the Traffic Code of the City and County of Honolulu" as it was passed in 1956. Honolulu Ordinance No. 1508 (1956).

In 1962 this section was amended to provide:

"d. Vehicles intending to turn left from a divided highway, exit from which is made by means of a left-turn decelerating lane constructed in the medial strip area, shall enter the decelerating lane and *shall yield the right-of-way to approaching vehicles* before proceeding with caution across the intersection and into the intersecting roadway, unless otherwise instructed; provided where no decelerating lane exists, such left turn shall be made with caution from the lane nearest the medial strip." (Emphasis added)
Honolulu Ordinance No. 2119 (1962).

turn decelerating lane constructed in the median strip area, shall enter the decelerating lane and shall come to a full stop before proceeding with caution across the intersection and into the intersecting roadway unless otherwise instructed by official signs and pavement markings."

The trial court refused to give Wong's requested instructions Nos. 13 and 14. No. 13 and the first half of No. 14 were properly refused as they were factually inapplicable. The second part of No. 14 states:

"Section XI. Right of Way

\*          \*          #          \*          \*

3.  Vehicle entering through street or stop intersection.

\*          \*          \*          \*          \*

"b. The driver of a vehicle shall likewise stop in obedience to a stop sign as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through street and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed."

Higa argues that this instruction was properly refused because this was not an intersection within the meaning of Honolulu Traffic Code § 15-2.23(10).[2] We cannot agree with such a narrow construction of the language of this

---

[2] Actually § 15-2.23(10) did not exist until Ordinance No. 2553 was approved on December 28, 1964. At the time of the accident in question, the definition of intersection was contained in Ordinance 1508 § 11.10 i, which provides:

"(10) Intersection. The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadway of two highways which join at or approximately at right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

The definition in the 1964 codification is, however, identical.

section. Clearly this was a "channelized intersection" within the definition of Section 11.10(k) (1956),[3] and clearly too, channelized intersections are a kind of intersection.

Wong argues that No. 43 does not adequately cover the duty of defendant Higa, after stopping, to yield the right-of-way to Wong's vehicle,[4] which was "not so obliged to stop" and was "approaching so closely as to constitute an immediate hazard."

Higa argues that the substance of defendants' No. 14 was covered by defendants' No. 43. No. 43 merely requires that after stopping, the bus proceed "with caution across the intersection * * *." No. 14(b) was repetitious insofar as it requires stopping and caution, but it additionally requires "yielding to vehicles not so obliged to stop which are * * * approaching so closely as to constitute an immediate hazard * * *."

No. 14(b) was clearly more specific than No. 43. It affirmatively states that the bus driver had a duty, after stopping, to yield "to vehicles not so obliged to stop which are * * * approaching so closely as to constitute an immediate hazard * * *." This additional requirement is not reasonably implicit in the requirement of caution stated in No. 43. It was reversible error to refuse No. 14(b) under either view in *Young* v. *Price,* 50 Haw. 430, 439, 450, 442 P.2d 67, 73, 79 (1968).

## II. Cost of Uncertain Future Operation.

Appellant argues that it was reversible error for the trial court to allow argument on the cost of a future operation and pain and suffering incident thereto, where the

---

[3] Re-codified in 1964 as § 15-2.23(5).

[4] Higa's duty to yield the right-of-way was also required by Honolulu Ordinance No. 2119 (1962), later codified as § 15-9.10 of Honolulu Ordinance 2553 (1964).

need for the future operation was not clear to a "reasonable medical certainty."

"Reasonable medical certainty" is not required for future expenses. All that is required is probability. *Bachran* v. *Morishige,* 52 Haw. 61, 469 P.2d 808 (1970).

Plaintiff's treating physician, Dr. Lum, testified that he would not presently recommend the operation, that he should observe plaintiff's finger twice a month for an indefinite period and *if* atrophy or gangrene developed he would then recommend sympathectomy. Dr. Lum did *not* testify that it was probable that atrophy or gangrene would develop.

Plaintiff's consulting physician, Dr. Chock, also testified:

"Q   Doctor, in this patient itself with reasonable medical certainty, what is the probability of that condition worsening in the future?

"A   This will depend on the patient's personality.

"Q   And what do you mean by that?

*            *            *            *            *

"A   (Continuing) If she is restless, irritable, unable to obtain sleep, she will be more subject to exacerbation of pain. This is a possibility that may happen in the future.

*            *            *            *            *

"Q   Is there a possibility or probability of atrophy setting in on those fingers?

"A   Atrophy?

"Q   Yes.

"A   Yes, atrophy of muscles, bones and skin is associated with causalgia.

"Q   That, could you say with reasonable medical certainty, sir?

"A   Yes."

This testimony shows a remarkable muddying of the distinctions between possibility, probability and reasonable medical certainty.

 . Hopefully, our opinion in *Bachran* will eliminate one element (reasonable medical certainty) that added to the confusion here. The standard which *Bachran* mandates is probability. In order for a jury to properly consider as damages the cost of a future operation, there must be evidence that the operation is more probable than not. The operation in this case would be performed only if plaintiff's condition worsened, and there was no testimony whether worsening of her condition was a probability or merely a possibility.

The plaintiff's answering brief quotes the testimony of Dr. Chock as follows:

"Q And this particular treatment — what would it contemplate or what would it be?

"A This treatment will be primarily surgical, which means you will have to do a sympathectomy. * * *

\*　　　　\*　　　　\*　　　　\*　　　　\*

"Q If she were your patient, you would have performed one?

"A If the patient was agreeable."

If Dr. Chock had so testified, it would demonstrate that he thought a sympathectomy was warranted and this would be enough to get the issue of the future sympathectomy to the jury. But Dr. Chock did not so testify. The quotation shows the unfortunate distortion that results from the taking of a quotation out of context. The first part of the quotation deals with sympathectomy. The second part, in context, does not deal with sympathectomy at all, it deals with Dr. Chock's recommendation that a sympathetic *block* be performed. A sympathetic block is an injection which temporarily blocks nerves, whereas a sympathectomy is a permanent surgical cutting of nerves.

See Chapman, 4A Courtroom Medicine §§ 26.40 and 27.10. In short, Dr. Chock did *not* recommend a sympathectomy.

There is no evidence in the record that a sympathectomy will probably be appropriate for plaintiff's condition. The parties are in dispute as to the amount which the jury may have awarded plaintiff for this part of her damages. Therefore it seems to us impossible to rationally reduce the damages awarded.

These two errors compel reversal and remand. It is not necessary to consider the other eight grounds of the appeal. Because the case will be retried, however, we will indicate our views on two of these issues.

1. The fact that Higa was acquitted in the criminal proceedings (brought against him in connection with the accident) is not admissible in evidence, nor should it be mentioned by counsel to the jury. *United States* v. *Gramer*, 191 F.2d 741 (9th Cir. 1951); *Massey* v. *Meurer*, 25 App. Div. 2d 729, 268 N.Y.S.2d 735 (1st Dept. 1966); 10 St. Louis L.J. 393 (1966); III Jones on Evidence § 639 at 1219 (5th ed. 1958).

2. It was improper for plaintiff's counsel in argument to ask the jury to put themselves in plaintiff's place. *Texas Coca Cola Bottling Co.* v. *Lovejoy*, 112 S.W.2d 203 (Tex. App. 1937).

Reversed and remanded for new trial.

*Ronald G. S. Au* (*Leland H. Spencer* with him on the briefs, *Chuck & Fujiyama* of counsel) for defendants-appellants Gilbert K. W. Wong and Flynn-Learner.

*Leon L. M. Chun* (*Edward Y. N. Kim* with him on the brief) for plaintiff-appellee Mew Sun Leong.

*Herbert K. Shimabukuro* (*Libkuman, Shimabukuro & Ventura* of counsel) for defendants-appellees Honolulu Rapid Transit Co., Ltd., and Clifford Higa.