ROBERT McKEAGUE, Plaintiff-Appellee, *v.* KRIN TALBERT, Defendant-Appellant

NO. 8218

(CIVIL NO. 61302)

JANUARY 26, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

In this tort action, Krin Talbert (defendant) appeals from an order of the court below granting Robert McKeague's (plaintiff) Motion for Partial Summary Judgment on the issue of liability, the jury award of $100,293.85 damages for personal injuries suffered by plaintiff, and the court's award of interest on the judgment at 8% from the date of injury under Hawaii Revised Statutes (HRS) § 478-2 and § 636-16 (1982 Supp.).

The issues raised on appeal and our answers are as follows:

1. Whether the court erred in granting partial summary judgment to plaintiff on the issue of liability. Yes.

2. Whether the trial judge erred in not disqualifying himself pursuant to HRS § 601-7 and the Canons of Judicial Conduct. No.

3. Whether the court erred in not dismissing a juror on her statement that she would consider plaintiff's obligation to pay attorney's fees in assessing damages, and in not instructing the jury that attorney's fees should not be considered in awarding damages. No.

4. Whether the court erred in instructing the jury that it could consider future pain and suffering in awarding damages. No.

5. Whether the court erred in allowing plaintiff prejudgment interest dating from the time of injury. Yes.

On June 11, 1978, plaintiff was employed as a gas station attendant at Aiea, Oahu. On that day, he had completed servicing a car in one of the lanes and was standing in back of the car while filling out the credit charge slip. At that time, defendant drove into the same service lane and stopped behind plaintiff so that plaintiff was between the two cars. The distance between the two cars was approximately four feet. Defendant's Volkswagen van was still in its automatic gear with the motor running, and defendant had her foot on the brake to keep the van stationary. However, defendant's foot slipped off the brake and onto the gas pedal. Defendant's van moved forward, pinning plaintiff between the cars at his knees and injuring him.

On April 28, 1980, plaintiff filed this action to recover for those injuries. Defendant's answer raised the defenses of contributory

negligence and assumption of risk. On September 23, 1980, plaintiff filed a motion for partial summary judgment on the issue of liability. On November 6, 1980, the motion was denied and on November 14, 1980, plaintiff filed a motion for reconsideration. Upon reconsideration, the court granted the motion and, on January 27, 1981, entered summary judgment for plaintiff on liability. Trial was set for February 4, 1981.

On February 3, 1981, the trial judge convened in chambers with all counsel, but without the parties. At that time, defense counsel requested that the trial judge recuse himself from the case because of a past professional relationship with plaintiff's counsel, David C. Schutter. The judge declined to recuse himself. On February 4, 1981, defendant filed a written motion requesting disqualification, accompanied by her affidavit. The record does not indicate that any formal action was taken on this written motion.

The jury returned a verdict of $8,293.85 special damages and $92,000.00 general damages. On February 6, 1981, plaintiff filed a motion asking the court to fix the form of judgment by awarding interest to plaintiff under HRS § 636-16 and § 478-2. The court ordered interest at 8% under HRS § 478-2, as amended, and commencing on the date of the injury under HRS § 636-16. Judgment was entered on February 17, 1981 and defendant filed a Notice of Appeal on February 23, 1981.

1.

At the time of the hearing on the motion for reconsideration, the court had before it defendant's deposition, plaintiff's affidavit, plaintiff's answers to interrogatories, and an affidavit from Michael A. Penick, an ambulance paramedic who was called to the scene of the accident.[1] The decision of the court turned entirely upon the issue of contributory negligence.

In his affidavit and answers to interrogatories, plaintiff stated

---

[1] Penick's affidavit is not only hearsay but contains completely erroneous statements. Defendant's attempt in the trial court to use it to create an issue of material fact is completely untenable.

that he had just completed putting gas into a customer's car and was standing behind that car filling out the customer's bill, when he heard someone yell, "Look out," and something hit him. He stated he did not see defendant's vehicle before he was hit, had no warning, and no opportunity to get out of the way.

In her deposition, defendant testified that she thought plaintiff saw her or knew she was there before the accident. She stated that she saw him look up at her and continue to write out the bill in the brief period before the accident.

The court found that there was no genuine issue of material fact and that plaintiff was not contributorily negligent. We find from the record that there was a genuine issue of material fact and summary judgment should not have been granted.

A motion for summary judgment is properly granted under Rule 56(c), Hawaii Rules of Civil Procedure (HRCP) (1980), if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 146-47, 598 P.2d 161, 163 (1979); *Anderson v. Oceanic Properties, Inc.,* 3 Haw. App. 350, 650 P.2d 612 (1982). For purposes of summary judgment, a fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *City and County of Honolulu v. Toyama,* 61 Haw. 156, 598 P.2d 168 (1979); *Lau v. Bautista, supra; Hunt v. Chang,* 60 Haw. 608, 594 P.2d 118 (1979). In deciding the motion, both the trial court and the reviewing court must view the evidence in the light most favorable to the non-moving party. *Lau v. Bautista, supra; Costa v. Able Distributors, Inc.,* 3 Haw. App. 486, 653 P.2d 101 (1982); *Anderson v. Oceanic Properties, Inc., supra; Windward Partners v. Lopes,* 3 Haw. App. 30, 640 P.2d 872 (1982). Because its impact is rather drastic, summary judgment must be used with due regard for its purposes and should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2712 (1973). Moreover, questions of negligence are ordinarily not susceptible to summary judgment. 10 WRIGHT & MILLER, *supra, Civil* § 2729 (1973); *De Los Santos v. State,* 65 Haw. ___, 655 P.2d 869 (1982); *Pickering v. State,* 57 Haw. 405, 557 P.2d 125 (1976); *cf. Tsugawa v.*

*Reinartz,* 56 Haw. 67, 527 P.2d 1278 (1974).[2]

> It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of the opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented.

*Pierce v. Ford Motor Company,* 190 F.2d 910 at 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S. Ct. 178, 96 L.Ed. 666 (1951).

Viewing the evidence before the trial court in the light most favorable to defendant, we think there was a genuine issue of material fact which defendant should have been allowed to present to the jury. It can be inferred that plaintiff did in fact see defendant's vehicle prior to the accident. It is proper then to question whether a reasonable person in plaintiff's situation should have foreseen a danger to himself and moved out of harm's way. Even if plaintiff's negligence, if any, were found to be of only the slightest degree, defendant was entitled to have the jury determine that degree for the purposes of our comparative negligence statute.[3]

---

[2] Summary judgment is analogous to directed verdict. *Fry v. Bennett,* 59 Haw. 279, 580 P.2d 844 (1978).

[3] Hawaii Revised Statutes § 663-31 (1976) provides:

*Contributory negligence no bar; comparative negligence; findings of fact and special verdicts.* (a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies, the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special verdict which shall state:

(1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

(2) The degree of negligence of each party, expressed as a percentage.

(c) Upon the making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the

Citing the so-called "Workman in the Street" rule, plaintiff argues that at the time of his injury, he was in a place where he had a right to be and he was justified in assuming defendant would keep her car under control and avoid injuring him. *Quam v. Wengert,* 86 N.W.2d 741 (N.D. 1957); *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E.2d 903 (N.C. 1956).

However, we do not view that rule as providing freedom from liability or contributory negligence as a matter of law. We agree with defendant that the rule merely establishes a rebuttable presumption that a worker on the street was exercising due care. While the law does not impose a duty on the workman in that situation to be constantly on the lookout for motor vehicles, we think, nonetheless, he is required to "use such care and observation for safety as it is possible for him to do under the circumstances," *Quam v. Wengert, supra,* at 747, and cannot utterly disregard the matter of his own safety. *Kellogg v. Thomas, supra,* at 908. Whether the worker has exercised reasonable care for his own safety in view of his work and surrounding circumstances is ordinarily for the jury under proper instructions from the court. *Id.* at 909.

Assuming, arguendo, that the rule is applicable to the instant case, we think there still remains the question whether considering all the circumstances, the plaintiff was keeping a proper lookout.

We are compelled to reverse the granting of summary judgment for the reason that we find from the record that a genuine issue of material fact exists. 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2716 (1973). *City and County of Honolulu v. Toyama, supra.* We cannot say as a matter of law that plaintiff was not in any degree contributorily negligent.

2.

In the affidavit accompanying her Motion Requesting Dis-

---

award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

(d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

qualification, defendant alleged:

2. That the amounts claimed by the plaintiff in this lawsuit are in excess of my insurance policy limits.

3. That my attorney, David J. Dezzani, has advised me that Mr. David C. Schutter, the plaintiff's attorney, has in the past had a professional relationship with Judge Fukushima which has resulted in a ruling and/or an instruction by Mr. Daniel Heeley of the Ethics Commission that this relationship be disclosed to Mr. Schutter's opposing counsel in cases to be heard by Judge Fukushima.

4. That I do not personally know either Mr. Schutter or Judge Fukushima but, because of the appearance of impropriety, I respectfully request and desire that Judge Fukushima disqualify himself from hearing the trial of this case against me.

Defendant argues that Judge Fukushima should have disqualified himself pursuant to HRS § 601-7 (1976).

(b) Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. . . . Any judge may disqualify himself by filing with the clerk of the court of which he is a judge a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action.

HRS § 601-7(b) (1976).

Our supreme court has previously held that the statute must be strictly construed. *State v. Iaea*, 55 Haw. 80, 84, 515 P.2d 1250, 1253 (1973); *Whittemore v. Farrington*, 41 Haw. 52 (1955). Also, the affidavit must contain allegations of a personal bias or prejudice and facts and reasons from which a sane and reasonable mind may fairly infer bias or prejudice. *Glover v. Fong*, 39 Haw. 308, *appeal dismissed*, 197 F.2d 710 (9th Cir. 1952); *Whittemore v. Farrington, supra*. Defendant's affidavit is deficient in both regards and is insufficient as a

matter of law. *Whittemore v. Farrington, supra* at 59. In her briefs, defendant has attempted to bring before this court matters outside the record to support her motion. However, defendant's affidavit must stand on the basis of the allegations therein and matters outside the affidavit cannot be considered. *Whittemore v. Farrington, supra* at 61.

Defendant argues further that the judge below should have disqualified himself in order to avoid the appearance of impropriety as required by Canons 2 and 3C of the Code of Judicial Conduct.

Canon 2 of the Code of Judicial Conduct states in part:

A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Canon 3C(1) states:

A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

In her brief, defendant states that Judge Fukushima was the secretary and director of a corporation that was represented by Mr. Schutter's firm in prior litigation. However, the mere fact that a judicial officer was formerly represented by a law firm presently appearing before him would not, *per se*, require disqualification based on an appearance of impropriety. *See Miller Industries, Inc. v. Caterpillar Tractor Co.*, 516 F. Supp. 84 (S.D. Ala. 1980). *Cf. Yorita v. Okumoto*, 3 Haw. App. 148, 643 P.2d 820 (1982); *United States v. Zagari*, 419 F. Supp. 494 (N.D. Cal. 1976). Other circumstances in which disqualification has been required have involved personal and on-going relationships between the attorney and the judge, *Potashnick v. Port City Construction Co.*, 609 F.2d 1101 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S. Ct. 78, 66 L.Ed.2d 22 (1980); *Smith v. Sikorsky*, 420 F. Supp. 661 (C.D. Cal. 1976), or stock ownership in a corporate party litigant before the court. *Thomson v. McGonagle*, 33 Haw. 565 (1935). In the case at bar, the judge was a minority stockholder, the corporation was not before court, the corporate action was completed, and the law firm no longer represented the

corporation.

The case of *Texaco, Inc. v. Chandler,* 354 F.2d 655 (10th Cir. 1965), *cert. denied,* 383 U.S. 936, 86 S. Ct. 1066, 15 L.Ed.2d 853 (1966), cited by appellant is inapposite to the instant matter. In *Texaco,* the court relied on the then existing language of Title 28, United States Code § 455[4] which made disqualification mandatory where the requisite relationship existed between the judge and any party or attorney. Neither the state Code of Judicial Conduct nor HRS § 601-7 has a similar mandatory provision.

We also note that the federal statute on judicial disqualification, 28 U.S.C. § 455(a), makes disqualification mandatory when a judge's impartiality might reasonably be questioned, while the state Code of Judicial Conduct, Canon 3C(1)(a), makes disqualification discretionary. *Yorita v. Okumoto, supra.*

We do not believe that the facts of the instant case present such a relationship as requires disqualification. Furthermore, we do not believe a reasonable person would question the judge's impartiality in this case. *Miller Industries v. Caterpillary Tractor Co., supra. Cf. Yorita v. Okumoto, supra.*

3.

Defendant's third point of error is double-faceted. She argues that the court erred in not dismissing a juror based on the juror's statement that she would consider attorney's fees which plaintiff would be obligated to pay in assessing damages, and in refusing to instruct the jury that attorney's fees should not be considered in awarding damages.

The record indicates that defendant did not challenge the juror, Mrs. Kawahara, for cause. Defendant cannot now be heard to complain because the court did not excuse her. *Territory v. Fukunaga,* 30 Haw. 697, 704, *appeal dismissed,* 33 F.2d 396 (9th Cir.), *cert. denied,* 280 U.S. 593, 50 S. Ct. 39, 74 L.Ed. 641 (1929).

Defense counsel concluded voir dire examination of Mrs. Kawahara as follows:

MR. DEZZANI: Well, your Honor —

THE COURT: You're not going to excuse her yet. It's not that easy to get off jury duty.

---

[4] The statute was amended in 1974.

MR. DEZZANI: Well, Ms. Kawahara, if you're a juror in this case, are you going to try to be fair to both sides?

THE PROSPECTIVE JUROR: Yes.

MR. DEZZANI: You realize that what you're doing in this courtroom is trying to do what is justice not only for the plaintiff but also for my client, the defendant?

THE PROSPECTIVE JUROR: I understand that.

MR. DEZZANI: Okay. Pass, your Honor.

THE COURT: Ms. Kawahara's passed for cause.

(Transcript at 25.)

The ultimate question in determining whether a juror should be seated is whether the juror can give the parties a fair and impartial trial upon the law and the evidence. In the determination of that question much is left to the discretion of the trial judge who is in a much better position than the appellate court to ascertain from the manner and answers of the juror whether she could give a fair and impartial verdict. *Territory v. Johnson,* 16 Haw. 743, 754 (1905). We find nothing in the record to indicate any abuse of discretion.

Although defendant attempted to argue at hearing that his attempt to challenge Mrs. Kawahara was cut off by the court and that he did not really accept her as a juror, the above record does not so indicate. Furthermore, defense counsel stated at oral argument that he wanted Mrs. Kawahara as a juror. Defense counsel stated that he thought Mrs. Kawahara would make a good juror, but that he expected the court to instruct the jury that attorney's fees were not to be considered in assessing damages.

This brings us to the second facet of defendant's point of error — that the court refused the following proffered instruction over defendant's objection:

In deciding the amount to award as damages in this case, you are not permitted to give consideration to, nor make any award for, attorney's fees. This matter is an issue of law which is not your concern and it should play no part in your deliberations.

The instruction is unquestionably a correct statement of law. *Olokele Sugar Co. v. McCabe, Hamilton & Renny Co.,* 53 Haw. 69, 72, 487 P.2d 769, 771 (1971). However, plaintiff argues that it is a cautionary instruction, the giving of which is in the discretion of the trial judge. We do not think the instruction is truly a "cautionary instruction." We understand a cautionary instruction to be one in

which the jury is instructed to view certain evidence with caution. 75 Am.Jur.2d *Trial* § 682 *et seq.* (1974); Annot., 130 A.L.R. 1489 (1941). However, we do not think the court erred in refusing the instruction.

The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict. In his instructions, the trial judge should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled. The chief object of the court's instructions is to explain the law of the case, to point out the essentials to be proved on one side or the other, and to bring into view the relation of the particular evidence adduced to the particular issues involved. 75 Am.Jur.2d *Trial* § 573 (1974).

Defendant's instruction had nothing to do with any of the issues or evidence in the case, and its refusal was not reversible error. The requested instruction assumed an issue not in controversy and was properly refused. *See Kometani v. Heath,* 50 Haw. 89, 431 P.2d 931 (1967). There was no evidence regarding attorney's fees or any argument by counsel relating thereto.

In determining whether reversible error occurred in instructions to the jury, we must consider the charge as a whole. *Kometani v. Heath, supra; Cozine v. Hawaiian Catamaran, Ltd.,* 49 Haw. 77, 412 P.2d 669 (1966); *Collins v. Shishido,* 48 Haw. 411, 405 P.2d 323 (1965). There is no question that the entire charge to the jury correctly stated the law applicable to the issues between the parties.

Even in the context of the colloquy between defense counsel and juror Kawahara, we find no error in refusing the instruction. As noted, Mrs. Kawahara indicated she would do justice to the parties, the judge was satisfied, and defendant did not challenge her — for cause or peremptorily. Defendant's assumption that the jury as a whole was infected by Mrs. Kawahara's thinking is unwarranted.

4.

Over defendant's objection, the court instructed the jury:

COURT'S INSTRUCTION NO. 1

General damages are those damages which will compensate the Plaintiff reasonably for the physical injuries sustained and for any pain, suffering and mental anguish, if any, suffered by

the Plaintiff and proximately resulting from the injuries in question *and for such like detriment, if any, as the Plaintiff is reasonably probable to suffer in the future from the same cause.*

COURT'S INSTRUCTION NO. 2

(A) Reasonable compensation for any pain, disability and mental and emotional distress suffered, *and for similar suffering reasonably probable to be experienced in the future.* No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for pain, disability and mental and emotional distress. Nor is the testimony or opinion of any witness required as to the amount of reasonable compensation for such items of damage. In making an award for such items, you shall exercise your common sense and good judgment and award such amount as is just and reasonable in the light of the evidence. [Emphasis added.]

Citing *Franco v. Fujimoto,* 47 Haw. 408, 390 P.2d 740 (1964) (overruled in part, on other grounds, 51 Haw. 383 (1969)); *Bachran v. Morishige,* 52 Haw. 61, 469 P.2d 808 (1970); and *Leong v. Honolulu Rapid Transit Co., Ltd.,* 52 Haw. 138, 472 P.2d 505 (1970), defendant argues that the underscored portions of the instructions were erroneous because there was no expert testimony establishing future pain and suffering as a reasonable medical probability.

Clearly, future pain and suffering is a compensable element of damages in a personal injury action. 22 Am.Jur.2d *Damages* § 27 (1965); *Franco, supra; Bachran, supra;* and *Leong, supra.*

In *Franco, supra,* it is clearly stated that where the injury is subjective in character and of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering, recovery therefor will be allowed only upon competent medical testimony bearing upon the likelihood of such future pain and suffering. *Id.* 47 Haw. at 433, 390 P.2d at 754. In *Bachran,* however, it is also stated that no particular words of art are necessary to express the degree of proof required. "It is sufficient if the expert's words can be interpreted to show reasonable probability." *Id.* 52 Haw. at 69, 469 P.2d at 813. In the three cases cited by defendant, it was found that there was no medical testimony at all to support the instruction.

Plaintiff argues that a part of his testimony relates to the objective

nature of the injury in the form of his weakened knee and a "drop foot"[5] problem. In support of this argument, plaintiff also cites *Franco v. Fujimoto, supra.*

In *Franco,* our supreme court said that where the injury may be characterized as one of an objective nature and it is plainly apparent from its nature that it will be permanent or that the injured person will necessarily undergo pain and suffering in the future, the presentation of expert testimony is not essential, and in such cases it is proper for the jury to pass upon that question without the aid of medical or other expert testimony. *Id.* at 432, 390 P.2d at 754.

Plaintiff also contends that the testimony of Dr. Popper[6] was sufficient to establish the probability of future pain and suffering.

Dr. Popper testified that the last time he saw plaintiff was September 15, 1980. At that time plaintiff was still suffering some disability from his injury and Dr. Popper stated he would achieve relatively complete recovery within four to eight months. The trial began February 4, 1981, approximately four and one-half months after Dr. Popper's last examination. Dr. Popper's testimony "can be interpreted to show reasonable probability" of future pain and suffering for approximately eight months from September 15, 1980.

We think that testimony was sufficient for the jury to find that plaintiff would continue to face pain and suffering at least until the time Dr. Popper indicated probable complete recovery and, therefore, the instruction was proper.

5.

After the verdict, defendant filed a "Motion to Fix Form of Judgment" in which he requested the court to fix interest on the judgment by selecting one of four methods:

I. Interest at the rate of eight percent (8%) per annum from the date of the accident, June 11, 1978;

---

[5] A condition in which the muscle that raises the toes toward the knee is weakened, causing the foot to remain in the "dropped" position.

[6] Dr. Popper was a neurologist who assisted Dr. Takai, the treating physician, in diagnosing and monitoring nerve injury to plaintiff's leg.

II. Interest at the rate of six percent (6%) per annum from June 11, 1978 (the date of the accident) to June 9, 1979 (the date of the rise to 8% in the interest rate) and at eight percent (8%) from June 9, 1979 to the present;

III. Interest at the rate of six percent (6%) per annum from May 18, 1979 (the effective date of the retroactivity statute) to June 9, 1979 and eight percent (8%) from June 9, 1979 to the present; or

IV. Interest at the rate of eight percent (8%) per annum from the date of Judgment. (Tr. 230)

The court selected method number I.

Defendant argues that since the date of the injury (June 11, 1978) preceded the enactment of HRS § 636-16[7] and the amendment to § 478-2 increasing the interest rate on judgments to 8%, the court's action gave retroactive effect to both statutes. Section 636-16 became effective May 18, 1979. Act 78, Session Laws 1979. Section 478-2 was amended effective June 9, 1979. Act 211, Session Laws 1979.[8]

Plaintiff argues that the statute gives the trial judge discretion to award prejudgment interest as an item of costs. We disagree.

Statutes regarding award of costs may be given retrospective operation. 20 Am.Jur.2d *Cost* §§ 5, 8 (1965). However, interest is a noncost item not properly includable in a party's bill for costs. *Gonsalves v. Gilbert*, 44 Haw. 543, 555, 356 P.2d 379, 386 (1960).

In *City and County of Honolulu v. Caetano*, 30 Haw. 1 (1927), an eminent domain case, the trial court, after judgment and after the period for appeal, partially granted defendant's motion to amend judgment, and awarded interest from the date of judgment, but denied defendant's request for interest from the date of summons.

Our supreme court held that the eminent domain statutes did

---

[7] Hawaii Revised Statutes § 636-16 provides:

*Awarding interest.* In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort, may be the date when the injury first occurred and in cases arising by breach of contract, it may be the date when the breach first occurred.

[8] The statute was amended again in 1981 to increase the interest rate to 10%. Act 9, S. L. 1981, effective April 16, 1981.

not preclude an award of interest from the date of summons as an element of damages for "blight of summons."[9] Because it was an element of damages, however, it could and should have been presented for adjudication at trial. The original judgment was not appealed and, since defendants were not claiming that the judgment did not conform to the decision of the trial court on damages, could not be amended.

In *Lucas v. Liggett & Meyers Tobacco Co.*, 51 Haw. 346, 461 P.2d 140 (1969), a tort action for conversion, plaintiffs were awarded judgment against one co-defendant but the action was dismissed as to the other. On appeal, the case was remanded with instruction to enter judgment for plaintiffs against both defendants. On remand, the judgment was entered and plaintiffs moved for approval of costs and interest. Plaintiffs' request for interest commencing from the date of the original judgment was denied.

Plaintiffs appealed the denial of interest and our supreme court held that interest is compensatory in nature and is properly awarded to a plaintiff "from the date of conversion of his property by a defendant until the date judgment is satisfied."[10] The court also held that HRS § 478-2 does not preclude prejudgment interest. The court awarded interest from the date of the original judgment.[11]

Since *Caetano* and *Lucas,* then, it appears that the rule in this jurisdiction has been that prejudgment interest is recoverable as an element of damages from the date of injury, even if unliquidated at

---

[9] As to "blight of summons" damages, see *City and County of Honolulu v. Market Place, Ltd.,* 55 Haw. 226, 517 P.2d 7 (1973); *City and County of Honolulu v. Bonded Investment Co., Ltd.,* 54 Haw. 385, 507 P.2d 1084 (1973); *State v. Coney,* 45 Haw. 650, 372 P.2d 348 (1962) (overruled in part, on other grounds, 54 Haw. 385 (1973)).

[10] The court cited 64 Yale L.J. 1019 (1955); 38 Notre Dame Law. 58 (1962); and 15 Stan. L. Rev. 107 (1962). The authors of those notes point out that interest is compensation for a loss measured in money. Although there is confusion in the law relating to the award of interest commencing from the date of injury, 15 Stan. L. Rev. 107, it is recognized that an injustice results if it is not. 38 Notre Dame Law. 58, at 60 (1962).

[11] Plaintiffs did not request interest from the date of conversion. The rule swims against the current of the general rule against retroactivity. *See City and Borough of Juneau v. Commercial Union Ins. Co.,* 598 P.2d 957 (Alaska 1979). Also, we do not think that once a judgment is entered and interest awarded a subsequent amendment in the statutory interest rate on judgments can be applied retroactively. *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.,* 54 Idaho 765, 37 P.2d 407 (1934); *Swanson v. Flynn,* 75 N.D. 597, 31 N.W.2d 320 (1948).

that time. The plaintiff must prove that damage, however, and recovery would be subject to any defenses that defendant might raise.[12]

Why, then, the enactment of HRS § 636-16?

The legislative history of HRS § 636-16 indicates that the legislature intended the interest as added compensation in order to undo substantial injustice caused by delay.

> The purpose of this bill is to more clearly define the trial judge's descretion [sic] in awarding interest in civil cases.

> Your Committee understands that at the present time interest is generally awarded commencing on the day the judgment is rendered. Where the issuance of a judgment is greatly delayed for any reason, such fixed commencement date can result in substantial injustice. Allowing the trial judge to designate the commencement date will permit more equitable results. Also, it is expected that party litigants will give serious regard to this discretion on the part of the trial judge so that those who may have had an unfair leverage by the arbitrariness of the prior rule will arrive at the realization that recalcitrance or unwarranted delays in cases which should be more speedily resolved will not enhance their position or assure them of a favorable award.[13]

Conf. Comm. Rep. No. 67, 10th Hawaii Leg., 1st Sess., *reprinted in* Senate Journal 984 (1979).

We think the situation that gave rise to the statute was that, notwithstanding *Caetano* and *Lucas*, plaintiffs in this jurisdiction have not pleaded and proved interest as an element of damages except in contract actions or actions for liquidated damages. Also, notwithstanding that in *Lucas* the court said § 478-2 does not preclude prejudgment interest, the courts in this jurisdiction have historically not been asked to award it.[14]

---

[12] Such defenses could be laches, unconscionable demands, legal impossibility of payment, 15 Stan. L. Rev., *supra*, 111, and net income or value of use in an eminent domain case. *City and County of Honolulu v. Caetano, supra,* at 8.

[13] Some writers have suggested that prejudgment interest can be an effective tool for cutting delays in litigation. Monek, *Court delay: Some causes and remedies,* 69 A.B.A. J. 12 (Jan. 1983).

[14] Court and counsel, at least before interest rates reached significant figures, were naturally preoccupied with the larger issue of liability. *See* 15 Stan. L. Rev. 107 (1962). In the instant case, for example, no attempt was made to prove interest damage and plaintiff is not assisted by *Lucas.*

We cannot say whether the legislature was aware of *Lucas,* but we think that § 636-16 replaced that rule, and courts in all civil cases except eminent domain have the discretion to award prejudgment interest. However, we think the statute is governed by the general rule in this jurisdiction that statutes are not to be construed to be retroactive unless so stated therein or clearly stated by the legislature. *In re Christian,* 65 Haw. ____, 652 P.2d 1137 (1982). We find nothing in § 636-16 or its legislative history indicating an intent to authorize the court to award prejudgment interest for any period prior to its enactment.

The court below, therefore, could exercise its discretion to award interest to commence only from the effective date of § 636-16 (May 18, 1979), and was limited to the maximum prescribed by § 478-2. Applying the same general rule against retroactivity to § 478-2, the court could not apply the 8% interest rate to any period of time before the date that § 478-2 was amended (June 9, 1979). The court should have selected option III.

Defendant also argues that the court abused its discretion in awarding interest from the date of injury, since plaintiff waited almost two years before filing suit yet discovery and trial were completed in ten months. In view of the nature and extent of plaintiff's injuries and the treatment thereof, we do not think the two years delay is sufficient basis for this court to find abuse of discretion by the trial judge.

We find no reversible error arising in the damages trial and the jury's award is affirmed. The summary judgment on liability, and the award of interest are vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.

*David J. Dezzani (Dewey H. Kim, Jr.,* with him on the briefs; *Goodsill, Anderson & Quinn* of counsel) for defendant-appellant.

*David C. Schutter (Mark R. Thomason* with him on the brief; *Schutter & Pavey* of counsel) for plaintiff-appellee.